**In re Francine PEAK, Appellant.**

**No. 96–SP–439.**

District of Columbia Court of Appeals.

Argued March 4, 1998

Decided Sept. 21, 2000.

Jaclyn S. Frankfurt, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Darryl Blane Brooks, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Thomas C. Black, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and STEADMAN, and SCHWELB, Associate Judges.

PER CURIAM:

Appellant, Francine Lynch, designated in the trial court and in the caption of this case as Francine Peak, (herein Lynch) appeals following a conditional plea of guilty to criminal contempt for violation of the terms of one provision of a release order by failing to refrain from illegal drug use. The plea was in response to a thirteen-count show cause order which alleged four

violations of a permanent injunction and nine violations of the release order that was entered as part of a prior contempt proceeding for violation of the injunction. Her principal argument on appeal is that she cannot be convicted of contempt because the permanent injunction was "void" and therefore the release order was likewise "void." We conclude that even if we assume that the injunction was void (an issue we do not reach), the trial court had the authority to enter the release order and that Lynch can be subject to contempt for violations of that order. However, we also conclude that appellant is correct in arguing that the contempt proceedings were flawed because the private prosecutor was the attorney for the plaintiff in the underlying civil proceedings. Accordingly, we remand the case to allow Lynch the opportunity to withdraw her guilty plea.

## I.

On September 22, 1993, Yvonne Turner, filed a *pro se* complaint against "Francine Peak," alleging that Peak had harassed and threatened her and claiming intentional infliction of emotional distress.[1] In the complaint, Turner demanded judgment against Lynch in the amount of $2,000. Turner filed a motion for a restraining order and a preliminary injunction the same day. The return of service of the special process server shows that "Francine Peak" was served with copies of only the summons and complaint on October 3, 1993.[2] The certificates of service on the two motions are not completed. On Octo-

ber 4, 1993, the trial court issued a temporary restraining order (TRO) against Lynch, restraining her from molesting, harassing, threatening, or stalking Turner and ordering Lynch not to go within 100 feet of Turner's residence. The trial court scheduled a hearing on the preliminary injunction for October 29, 1993, and entered a default when Lynch failed to appear on that date. Several notices addressed to Francine Peak were returned to the court marked "attempted, not known" on the envelope.[3] The court (Judge Arthur Burnett) continued the case and ordered the Deputy U.S. Marshal to serve Peak with notice of a hearing to be held on December 17, 1993. The court stated in its order that a purpose of the order was "to assure adequate notice and due process protection of rights as the violation of any subsequent Order could be punished as a contempt of court." The Deputy U.S. Marshal did not effect service. Nevertheless, the trial court held an *ex parte* hearing, and based on Turner's sworn testimony, the court issued a permanent injunction against Lynch.[4]

On May 20, 1994, Turner appeared before the court alleging that Lynch had violated the permanent injunction. Turner testified that in April 1994, Lynch "followed [her] to the mailbox, when [she] was going to the mailbox and [Lynch] stood in front of it and closed it up and kept talking to herself. . . . Then when [she] went back up the street [Lynch] followed [her] up the street." Turner also testified that Lynch continued to come in front of her house to

1. Turner intended the complaint for Lynch. "Peak" is the name of Lynch's mother.

2. Lynch does not challenge personal jurisdiction for purposes of the underlying civil action.

3. Some of these computer generated notices specified a date for hearing on a preliminary injunction.

4. The court ordered
 that a PERMANENT INJUNCTION be and is hereby entered against the [appellant], FRANCINE PEAK, restraining and prohib-

iting her from stalking, threatening or assaulting [appellee], and she is also enjoined and restrained from congregating or coming within 100 feet of [appellee] Yvonne Turner's residence at 326 L Street, S.E., a violation of this injunction being the basis for criminal contempt proceedings against FRANCINE PEAK.
IT IS FURTHER ORDERED that this case is hereby CLOSED, except for a motion to enforce the permanent injunction if there is a basis for a show cause hearing as to whether it has been violated.

curse and follow her. At the conclusion of the hearing, a show cause order was issued directing Lynch to come "to court and explain why she shouldn't be held in contempt for having violated the injunction." Notice was sent to Lynch's address.

On June 10, 1994, Lynch failed to appear at the show cause hearing. As a result, the court issued a writ of attachment for her. The writ was extended several times because of Lynch's failure to appear at the scheduled hearings. A bench warrant was also issued for Lynch's arrest.

On September 30, 1994, Lynch was brought before the court for the first time by the U.S. Marshal. During the hearing, Lynch indicated that her name was in fact Francine Lynch and that her mother's last name was "Peak." [5] Lynch admitted, however, that she did live at 1019 Fourth Street, the address to which notices from the court had been mailed. The court inquired of Lynch whether she would object to the issuance of a new injunction specifically outlining the prohibited conduct. The court also informed her that a violation of the proposed new order could subject her to punishment for contempt in the form of incarceration. Lynch stated, "I object to that because I didn't do anything." The court appointed counsel for Lynch, released her into third-party custody, and continued the case for a hearing on the contempt allegations. [6]

On October 28, 1994, Lynch failed to appear at the contempt hearing, although she had signed a notice to return to court. A bench warrant was issued for Lynch's arrest. On January 5, 1995, Turner and Lynch were before the court. During this hearing, Lynch admitted that she had been receiving the notices from the court, but claimed to have been told that she did not have to accept them because the name on the notices was incorrect. The court appointed Lynch new counsel, continued the matter, and released her, ordering her to participate in weekly drug testing. [7] At a subsequent status hearing on February 17, 1995, a new release order was issued, with various conditions.

On May 10, 1995, attorneys from the law firm of Crowell & Moring entered an appearance for Turner. During this hearing, discussions were held as to whether the contempt trial could be prosecuted privately. [8] On July 24, 1995, the court considered Lynch's Motion to Dismiss for Lack of Personal Jurisdiction in which she argued that she never received the summons and complaint. During the hearing, the process server, Ms. Jacqueline Gaskins, was called to testify. Ms. Gaskins identified Lynch as the person she had served in 1993 and stated that she answered to the name of Francine Peak. The court found Ms. Gaskins' testimony to be credible and denied Lynch's motion to dismiss, concluding that the court had personal jurisdiction over Lynch. [9]

On July 25, 1995, Lynch orally moved to dismiss for lack of subject matter jurisdiction, arguing that the court did not have authority to enjoin a crime. Lynch also asserted that the notice requirement of Super. Ct.Crim. R. 42(b) for contempt

---

5. Turner identified Lynch as the woman who had threatened her with a knife, called her names, and followed her for three years.

6. In addition, the court instructed Lynch "not to go near, assault, threaten, or otherwise approach [Turner].... Your failure to appear may result in a warrant for your arrest, a $1,000 fine or a year in jail or both simply for failure to appear." Lynch indicated that she understood the court's admonition.

7. During this hearing, the court expressed its concern regarding the prosecution of a crimi-

nal contempt without a prosecutor. The court encouraged Turner to seek counsel from the U.S. Attorney's Office. The court also referred Turner to the Georgetown and George Washington legal clinics.

8. During this hearing, the trial court did not object to a request to send a letter to the Office of Corporation Counsel to see if they would be willing to prosecute Lynch's case.

9. Lynch does not challenge on appeal that the service of the complaint and summons were proper.

proceedings had not been complied with. The court did not rule on the motion, but ordered Turner to file an application for another show cause order specifying each alleged violation of the injunction after September 30, 1994.

On August 11, 1995, an Application for Order to Show Cause was filed with the court which included thirteen counts of alleged violations, which included four counts of alleged violations in 1995, of the court's permanent injunction and nine counts of alleged violations of the court's release order of February 17, 1995. The Application was signed by the attorneys from Crowell & Moring as "Attorneys for the Court." On August 25, 1995, Lynch filed a Motion to Dismiss Application for Order to Show Cause. Lynch argued that: (1) the court lacked jurisdiction to issue a permanent injunction because appellee only sought money damages, therefore the granting of a permanent injunction violated Super. Ct. Civ. R. 54(c); (2) the court did not have authority to enjoin crimes; (3) the permanent injunction was void and therefore any proceedings arising from it were also void; and (4) the special prosecutors for the criminal contempt proceedings represented Turner, and therefore could not serve the court's interests because they were not disinterested. The court denied Lynch's motion. It also rejected Lynch's claim that the private prosecutors could not adequately represent the court finding that: (1) Crowell & Moring had "no financial interest in [the] case"; (2) the attorneys "came into the case only after there were allegations of criminal contempt"; and (3) there weren't "any problems with discovery [or any] conflicts of interest. . . ."

On February 5, 1996, Lynch entered a conditional plea of guilty to one count of failing to refrain from illegal drug use, as required by the release order, specifically reserving in the written memorandum of conditional plea "her right to appeal the legal issues to date."[10] The memorandum was signed by appellant, her counsel, the prosecutor, and the trial judge and stated: "The prosecutor has consented to this procedure, and the Court has approved it, with the understanding that if the defendant prevails on appeal, she will be allowed to withdraw her plea of guilty." After sentencing, Lynch noted this appeal.

## II.

Preliminarily, the government argues that Peak failed to preserve for review issues resolved prior to the entry of her plea. Specifically, the government contends that Peak does not meet the requirements for a conditional plea because: (1) the government did not consent to a conditional plea agreement; and (2) Peak did not specify the pre-trial issues reserved for review.

■ Ordinarily, a defendant who enters a plea of guilty waives all non-jurisdictional defects in the proceedings in the trial court. *Collins v. United States*, 664 A.2d 1241, 1242 (D.C.1995) (citing *United States v. Gines*, 964 F.2d 972, 977 (10th Cir.1992), *cert. denied*, 506 U.S. 1069, 113 S.Ct. 1023, 122 L.Ed.2d 169 (1993)). Pursuant to Super. Ct.Crim. R. 11(a)(2), "[w]ith the approval of the Court and the consent of the government, a defendant may enter a plea of guilty . . . reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion." Here, the government argues that the "Memorandum of Conditional Plea and Waiver of Trial," approved by the trial court, was ineffective to preserve issues for appellate review.

First, the government points out, the agreement was signed by private attorneys, and not by a government prosecutor.

---

10. It appears that as part of the plea bargain the remaining twelve counts of the show cause order were dropped. Should Lynch choose to withdraw her guilty plea, at least the eight remaining counts alleging violations of the show cause order would be subject to reinstatement.

Rule 11(a)(2) does require the consent of the government to a conditional plea. *Collins, supra,* 664 A.2d at 1242; *United States v. Markling,* 7 F.3d 1309, 1312 (7th Cir.1993), *cert. denied,* 514 U.S. 1010, 115 S.Ct. 1327, 131 L.Ed.2d 206 (1995); *United States v. Carrasco,* 786 F.2d 1452, 1454 (9th Cir.1986). Here, the attorney who acted in the role of a prosecutor during the contempt proceeding, with the approval of the trial court, signed the agreement as prosecutor. The government seems to challenge the authority of a private attorney-prosecutor to execute the conditional plea agreement.

■ It is well settled that criminal contempt proceedings may be prosecuted by private attorneys appointed by the court for that purpose. *Young v. U.S. ex rel. Vuitton et Fils, S.A.,* 481 U.S. 787, 793, 800–01, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987).[11] "Private attorneys appointed to prosecute a criminal contempt action represent the United States, not the party that is the beneficiary of the court order allegedly violated." *Young,* 481 U.S. at 804, 107 S.Ct. 2124. Criminal contempt proceedings which arise out of civil litigation are between the defendant and the public, rather than a part of the original action. *Id.* (citing *Gompers v. Bucks Stove & Range Co.,* 221 U.S. 418, 445, 31 S.Ct. 492, 55 L.Ed. 797 (1911)). When a private attorney is appointed solely for contempt prosecution, that attorney "is appointed to pursue the public interest in vindication of the court's authority." *Id.* Thus, for purposes of the contempt proceeding, the attorney so appointed represents the sovereign. *Id.*

■ Having been appointed to represent the government for purposes of the contempt proceeding, such attorney necessarily must have the authority to execute, on behalf of the sovereign, a conditional plea agreement under Super. Ct.Crim. R.

11(a)(2). To preclude the private prosecutor from functioning within the rules pertaining to the proceeding would severely restrict the court's inherent authority over contempt proceedings, including its ability to prosecute through a private attorney. *See id.* at 793, 107 S.Ct. 2124. Therefore, we hold that a private attorney appointed to prosecute contempt actions, consistent with the provisions of Super. Ct.Crim. R. 11(a)(2), may consent to a conditional plea agreement entered by the contemnor.

■ The government also contends that the conditional plea agreement did not conform to the requirements of Super. Ct. Crim. R. 11(a)(2) in another respect. The rule provides that "in order to challenge a pre-judgment motion, the defendant must enter a conditional plea 'reserving in writing the right, on appeal from the judgment, to review of the adverse determination of *any specified pretrial motion.*'" *Collins, supra,* 664 A.2d at 1242 (emphasis added). In this case, the memorandum of the conditional plea states that Peak "specifically reserves his/her right to appeal the legal issues to date." The government contends that this statement is too general to meet the rule's specificity requirement.

We have said that "[f]ailure to specify a particular pretrial issue in the written plea agreement will preclude raising that issue on appeal." *Collins, supra,* 664 A.2d at 1242 (citing Super. Ct.Crim. R. 11(a)(2)). However, in *Collins,* the appellant had failed to enter a conditional plea pursuant to the rule, and therefore had waived his right to appeal pre-judgment motions. *See id.* Similarly, in other cases cited by the government in support of its position, there was no contemporaneous writing reserving the right to appeal. *See United States v. Bell,* 966 F.2d 914, 916–17 (5th Cir.1992); *Carrasco, supra,* 786 F.2d at 1455;[12] *Markling, supra,* 7 F.3d at 1313;

11. *Compare Green v. Green,* 642 A.2d 1275, 1280–81 (D.C.1994) (holding that there is no right to public prosecutor in an intrafamily contempt proceeding).

12. The government cites *United States v. Rinaldi,* 257 U.S.App.D.C. 298, 302 n. 3, 808 F.2d 1579, 1583 n. 3 (1987) citing *Carrasco, supra,* for the proposition that failure to iden-

*Tabor v. State,* 326 Ark. 51, 930 S.W.2d 319, 322 (1996). That is not the case here. In this case, the parties and the court all signed the conditional plea agreement which specified that pretrial issues were reserved.

■■■ The writing requirement of Rule 11 is not jurisdictional, but rather in the nature of a right which can be waived by the government. *Markling, supra,* 7 F.3d at 1313.[13] The purpose of the writing and approval requirements is that "it ensures that the plea is entered with 'the considered acquiescence of the government,' it prevents 'post-plea claims by the defendant that his plea should be deemed conditional merely because it occurred after denial of his pretrial motions;' and it enables the court to verify that the issues reserved for appeal are material to the disposition of the case." *Carrasco, supra,* 786 F.2d at 1454.[14] Those goals are met sufficiently, even if imperfectly, where, as here, all parties and the court accepted in writing that this was a conditional plea and that Peak reserved her right to appeal, without exception, "the legal issues to date," and where the reserved issues were in fact reasonably evident to all concerned, including the court.

> tify precisely the pretrial issues preserved results in failure of the conditional plea. However, in *Carrasco,* there was no showing of the government's acquiescence to the plea. The court found that Carrasco reasonably believed that her plea was conditional based on prior discussions with the U.S. Attorney and an exchange in the courtroom. Therefore, the court vacated Carrasco's sentence because it could not conclude that she had entered the plea knowingly and voluntarily. *Id.* at 1455. There is no indication that the court would have rejected Carrasco's claim that the plea was conditional if it had been shown that the government had consented to it.

13. In interpreting local rules which are substantially identical to the federal rules, we may look to federal decisions interpreting the rules. *Jackson v. United States,* 626 A.2d 878, 881 (D.C.1993).

■■■ Variances from the procedures specified in the rule which do not affect substantial rights can be excused on appeal. *Bell, supra,* 966 F.2d at 916 (citing FED.R.CRIM.P. 11(h) (identical to Super. Ct. Crim. R. 11(h))). In *United States v. Fernandez,* 887 F.2d 564 (5th Cir.1989), the court excused the absence of a court-approved written conditional plea and addressed the merits of the appellant's appeal. *Id.* at 566 n. 1. In *Fernandez,* the prosecutor conceded that the appellant had reserved her right to appeal the suppression issue. Although there was no written plea agreement identifying the issues for appeal which had been approved by the trial court, the appellate court excused the irregularity, citing Rule 11(h), and upon consideration that the purposes of Rule 11(a) had been satisfied. *Id.*

Similarly, in the particular circumstances of this case, we are satisfied that the variance from the formality required by the rule can be excused. The prosecutorial authority for the contempt proceeding evidenced consent in writing to the conditional plea, and the trial court approved it. The court and the parties were in a position to know which pretrial rulings had been made which could form the basis for the appeal. Therefore, we reject the government's argument that the condition-

14. More precisely, it has been noted "that entry of a conditional plea of guilty is inappropriate unless the issue preserved for appeal would be dispositive of the case." *United States v. Wong Ching Hing,* 867 F.2d 754, 758 (2d Cir.1989) (citations omitted). Conditional pleas are not intended to be substitutes for interlocutory appeals. *Id.; see also* Advisory Committee Notes to 1983 amendments to FED.R.CRIM.P. 11. This consideration strengthens the desirability of precise identification of the rulings reserved in a conditional plea. The language used in the case before us is hardly an example of the desideratum, and trial courts should give particular attention in that regard before entering an order approving conditional pleas. Fortunately, however, the actual legal issues involved in the ruling here on Lynch's motion to dismiss the order to show cause were clear, and the issues we decide on this appeal were potentially dispositive.

al plea was not effective to reserve consideration on appeal of the pretrial issues resolved against Peak in the trial court.

### III.

 Lynch argues that the show cause order charges were invalid because they were based directly or indirectly on her failure to comply with a void order. In the contempt proceeding, Peak was required to show cause why she should not be held in contempt for violating the terms of an injunction prohibiting her from stalking, threatening or assaulting her neighbor or coming within a hundred feet of her home. Peak contends that the injunction was void because it was entered without notice to her or an opportunity to be heard and that voidness of an order is an absolute defense to contempt. The government argues that, at most, the injunction was voidable, and therefore, Peak was obliged to obey it. It takes the position that the appeal is untimely insofar as it challenges the injunction. In the context of this case, the injunction's status acquires its particular prominence because of Lynch's argument that the voidness of the injunction also renders the release order invalid and hence none of her contempt counts can form the basis of a conviction, including the one to which she pled guilty and from which this appeal is taken. We therefore shall simply assume for present purposes that the injunction was void and proceed immediately to an examination of the effect of such a ruling on the release order.

 Lynch argues that she cannot be held in criminal contempt for violation of the release order issued on February 17, 1995. She contends that since the initial injunction was void, there is no basis for criminal contempt, and therefore, the court lacked jurisdiction to place restrictions upon her liberty. We are not persuaded that a subsequent determination that the injunction was void vitiates the authority of the court to issue a release order pending proceedings instituted in accordance with Super. Ct.Crim. R. 42. Fundamental to an orderly system of justice is the ability of the court to hold individuals in contempt. *Brooks v. United States,* 686 A.2d 214, 220 (D.C.1996) (citations omitted). Contempt proceedings in Superior Court are governed by Super. Ct.Crim. R. 42. *Id.* Rule 42(b) provides that upon issuance of an order to show cause, "[t]he defendant is entitled to be released on conditions or detained as provided in these Rules." D.C.Code § 23–1321(a) provides for the court to enter a release order to a person "charged with an offense." Lynch was in fact charged, albeit under an order to show cause based upon a void order. Nevertheless, the court must have the authority to issue such orders to maintain an orderly process even for cases in which it is subsequently determined that the charges were invalid. Therefore, we reject Lynch's argument that she cannot subsequently be charged with contempt for disobedience to such orders.[15]

### IV.

In *Young,* the Supreme Court held in the exercise of its supervisory authority over the federal courts, that "counsel for a party that is the beneficiary of a court order may not be appointed as prosecutor in a [criminal] contempt action alleging a violation of that order." *Young, supra,* 481 U.S. at 809, 107 S.Ct. 2124. We have not decided whether decisions issued under the Supreme Court's supervisory authority are binding on an Article I court such as ours. *See Green, supra* note 11,

---

15. We do not reach any issues relating to the validity or appealability of the injunction. For the reasons set forth in the following part of this opinion, Lynch has the option of withdrawing her guilty plea. Since only four of the thirteen counts in the show cause order relate to the injunction, we see no practical possibility that her decision whether to withdraw the guilty plea at all would be affected by this consideration. See note 14, *supra.* Should she be convicted on any reinstated count for violation of the injunction, she would of course retain the right to challenge such a conviction on appeal.

642 A.2d [at] 1278–79 & n. 5. Even if we are not required to follow *Young*, however, we regard that decision as persuasive authority and adopt its holding.

 Criminal contempt proceedings arising out of civil litigation are between the public and the defendant. *Young, supra,* 481 U.S. at 804, 107 S.Ct. 2124 (quoting *Gompers, supra,* 221 U.S. at 445, 31 S.Ct. 492). In this case, the prosecutor initially represented Ms. Turner and owed an ethical duty to her. This made it potentially difficult for the same attorney now to commit himself, as a prosecutor must, exclusively to the *public* interest. "Indeed, it is the highest claim on the most noble advocate which causes the problem—fidelity, unquestioned continuing fidelity to the client." *Id.* (citation omitted). We agree with the Supreme Court that attorneys for complainants should not be placed in a position so laden with the danger of conflicting loyalties. We therefore conclude that, except under the special circumstances presented in *Green,* or in some other unusual situation, the court may not appoint counsel for a party who benefits from a court order to prosecute a criminal contempt proceeding arising from alleged noncompliance with that order.[16] Moreover, without deciding whether an appointment of such an attorney can ever constitute harmless error, we are satisfied that in this case, the designation of Ms. Turner's counsel to prosecute the criminal contempt case against Ms. Lynch was not harmless.

Accordingly, we remand the case with instructions to the trial court to allow Lynch, should she so opt in light of this opinion, to withdraw her guilty plea pursuant to Super. Ct.Crim. R. 11(a)(2) and for

further proceedings that may be taken subsequent thereto.

*So ordered.*

---

**16.** *Green* arose in the special context of "an intrafamily proceeding, conducted pursuant to local statutes and rules designed by the Council of the District of Columbia ... to expedite the application and, if necessary, the enforcement of [Civil Protection Orders] in cases involving domestic violence." *Green, supra,* 642 A.2d at 1279. Our decision in this case casts no doubt on the propriety of the contempt procedures authorized in that context by the Superior Court's Intra–Family Rules.