**Jose CHAVEZ–QUINTANILLA,
Appellant,**

v.

**UNITED STATES, Appellee.**

No. 00–CF–1498.

District of Columbia Court of Appeals.

Argued Oct. 17, 2001.

Decided Jan. 10, 2002.

Manuel J. Retureta, for appellant.

Lisa Monaco, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and John R. Fisher, Thomas J. Tourish, Jr., and Melanie Sloan, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and RUIZ, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

After a trial by jury, appellant was acquitted of possession of cocaine with intent to distribute,[1] but found guilty of possession of the same substance,[2] and possession of marijuana with intent to distribute.[3] In a contemporaneous bench trial, the trial judge found appellant guilty of unlawful possession of drug paraphernalia.[4] After an unsuccessful pretrial motion to suppress tangible evidence and statements attributed to appellant, he now contends on appeal that a search warrant issued in this instance was without probable cause to support it. He also claims that statements obtained from him were in violation of Fifth and Sixth Amendment protections. Being unpersuaded by these challenges, we affirm.

## I.

On April 2, 1999, in the early evening, Officer Erick Alvarado and other uniformed members of the Metropolitan Police Department executed a search warrant by entering a convenience store located at 1406 Florida Avenue, Northwest. Officer Alvarado observed appellant standing behind a small counter. Conversing in Spanish, Officer Alvarado requested that appellant walk over to where he was standing, and appellant complied. Officer Alvarado explained that he had a search warrant for the store and inquired whether there were any drugs in the store. Appellant responded affirmatively. Officer Alvarado then asked where the drugs were located, and appellant motioned with his head toward the counter. Officer Alvarado advised appellant that although he was not under arrest, handcuffs would be placed on him during the execution of the search warrant. After another officer took charge of appellant, Alvarado walked behind the counter and observed a clear plastic sandwich bag, containing what appeared to be a number of large chunks of crack cocaine, on top of cigarette packs. At that point, Officer Alvarado advised appellant that he was under arrest. Later tests revealed that the substance seized was crack cocaine.

---

1. D.C.Code § 33–541(a)(1) (1981). This provision has been recodified as D.C.Code § 48–904.01 (2001).

2. D.C.Code § 33–541(d) (1981). This provision has been recodified as D.C.Code § 48–904.01(d) (2001).

3. D.C.Code § 33–541(a)(1)(2)(D) (1981). This provision has been recodified as D.C.Code § 48–904.01(a)(1)(2)(b) (2001).

4. D.C.Code § 33–603(a) (1981). This provision as been recodified as D.C.Code § 48–1103(a) (2001).

During the course of the search, officers discovered a shirt behind the counter. A shirt pocket contained a small black digital scale. The police also seized cash and a razor blade with a residue of a controlled substance.[5] Another officer secured the evidence, and the remaining people in the store were asked to vacate the premises so that a dog trained to detect drugs could determine whether other drugs were present. The dog detected no other drugs on the premises. While appellant was sitting in a transport vehicle, Alvarado advised him of his rights. According to Alvarado, appellant told him that he understood his rights. At that time, Alvarado asked appellant whether a shirt found behind the counter belonged to him, and appellant answered affirmatively.

Appellant was then transported to the Third District police facility for processing, where a thorough search of his person revealed plastic bags inside his socks, which contained small zip-lock bags with a substance later identified to be marijuana.

## II.

### *THE SEARCH WARRANT*

#### A. Trial Court Proceedings

On March 25, 1999, Officer Alvarado applied for a search warrant to search a convenience store located at 1406 Florida Avenue, Northwest. In his affidavit in support of the application for the search warrant, Officer Alvarado stated his extensive experience as a police officer of more than ten years, including participation in over 500 arrests for narcotics violations, as well as comprehensive training in the area of narcotic investigations. The affidavit further noted that narcotics traffickers generally maintain records and keep contraband in an area that is accessible only to certain trusted individuals. The affidavit stated that Officer Alvarado acquired information that crack cocaine was being sold in the area of 14th Street and Florida Avenue, Northwest. It stated:

\*  \*  \*  \*  \*  \*

6. Your affiant has acquired information that in the area of 14th Street and Florida Avenue, Northwest, crack cocaine is being sold. Within the past 72 hours the confidential source met with your affiant at a secured location where It was searched and found to be free of money or drugs. The confidential source was provided with a sum of Metropolitan Police Funds and given specific instructions to purchase a quantity of crack cocaine from a street drug seller. The confidential source was kept under constant surveillance as It approached a known drug seller in the 1400 block of 14th Street Northwest. Officers observed the confidential source engage the known drug seller in a short conversation. Moments later the drug seller walked away from the confidential source and entered a convenience store located at 1406 Florida Avenue, Northwest, Washington, D.C. A short time later, the drug seller exited the store, approached the confidential source and made a hand to hand action with the confidential source. The confidential source was kept under constant surveillance as It responded to a secure location where It turned over to your affiant a ziploc bag containing a rock substance. The confidential source was searched, again, and found to be free of any drugs and money. Portion of the rock substance field tested positive for cocaine.

---

**5.** The scale and the razor blade, and supporting evidence were the basis for the drug paraphernalia charge.

7. The confidential source reported that the drug seller did not have the drugs on his person, but had to go inside the store to obtain the drugs.

Based on the information presented, a warrant was issued to search the entire premises, 1406 Florida Avenue, Northwest, on March 25, 1999, by a judge of the Superior Court.

At the pretrial hearing on the motion to suppress, one of the rulings made by the trial judge was to deny the request to exclude the physical evidence seized from the store. Appellant argued that the affidavit supporting the warrant was deficient on its face. The trial court, relying primarily on *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), applied a "total circumstances" test and concluded that the warrant was valid. The court also considered whether, in the absence of probable cause to issue the warrant, the Good Faith Exception [6] need be explored. The trial judge ultimately premised her decision on a finding that there was probable cause to search.

## B. Analysis

■ In reviewing a challenge to the validity of a warrant, we may consider only the content of the supporting affidavit. In doing so, the reviewing court should accord deference to the judicial decision of the judge or magistrate who issued the warrant, *Bynum v. United States*, 386 A.2d 684, 686 (D.C.1978), so long as there is a substantial basis for concluding the existence of probable cause. *Irving v. United States*, 673 A.2d 1284, 1287 (D.C. 1996); *see also Berry v. United States*, 528 A.2d 1209, 1210 (D.C.1987). Of course, probable cause to search or to arrest is measured by the totality of the circumstances, *Illinois v. Gates, supra*. This question, initially considered by a judicial

officer either in the issuance of a warrant or at a hearing to suppress evidence, or both, "is to be viewed from the vantage point of a prudent, reasonably cautious police officer ... guided by his experience and training." *United States v. Davis*, 147 U.S.App. D.C. 400, 402, 458 F.2d 819, 821 (1972). Thus the question we decide, giving deference to the judge who issued the warrant, is whether there was a substantial basis in the affidavit supporting the warrant to conclude, under the circumstances, that there was good reason to believe that the drugs that were sought were likely to be in the place—the store— to be searched.

In cases involving unlawful possession and sale of controlled substances, courts have carefully scrutinized the roles of special employees and confidential informants in the course of law enforcement investigations. In *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Supreme Court announced specific criteria to be considered where the government relies substantially upon information obtained from informants to establish probable cause. Often referred to as the *Aguilar–Spinelli* Two–Prong Test, the government, in proffering information obtained from an informant, was required to show that the source of information was reliable and, in addition, that the informant had a credible base of knowledge for the information proffered. After following this approach for more than a decade, the court in *Gates*, 462 U.S. at 235, 103 S.Ct. 2317, chose to return to an earlier mode of measuring probable cause, which was to evaluate the "total circumstances" to resolve the question. While recognizing the continued importance of examining the reliability and

6. *United States v. Leon*, 468 U.S. 897, 913,     104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

credibility of informants, the court expressly vacated the *Aguilar–Spinelli* approach as probably too rigid to function in the wide range of circumstances presented. *Id.* at 238, 103 S.Ct. 2317. Thus the court returned to an analysis of probable cause which was applied before *Aguilar–Spinelli*, i.e., in *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) (probable cause to arrest, based substantially on information obtained from a professional informant, buttressed by first-hand observations of an experienced officer, was evaluated by a standard of total circumstances).

■ Turning to this case, appellant, focusing mainly on the credibility of the special employee, argues that the affidavit was deficient because the special employee was not a trustworthy source of information that drugs were probably inside of the convenience store. Clearly this contention would find more support under *Aguilar–Spinelli*. However, looking at all of the circumstances, we note that the investigating officer was experienced in drug investigations, and averred in the affidavit that illicit drugs are generally kept in a convenient place in order to limit general access to them, but yet have them available for sale. The affiant also stated that he was informed that drug sales were taking place in an area proximate to the convenience store. The affiant also described a transaction which occurred shortly before issuance of the warrant. It was averred that before the transaction, the special employee had been searched to ensure he had no drugs, and had been given police funds to purchase the drugs. The seller was observed to enter appellant's store after a conversation with the special employee and, upon exiting the store a few minutes later, engage in a "hand to hand" action with the special employee. Immediately after the transaction, the special employee had drugs and no money. The special employee reported that the seller "had to go inside the store to obtain the drugs."

It is fair to say that no one asserted fact in the affidavit, standing alone, would satisfy the probable cause standard; but if we consider, as we should, the police training and experience bearing on this matter, as well as their general information about the particular location, when added to the circumstances surrounding the undercover sale, we agree with the judge who issued the warrant, and the trial judge who denied the motion, that the affidavit submitted in this instance demonstrated probable cause to search the convenience store. In reaching this decision, we are mindful of the guidance often repeated that probable cause is not a technical concept, but rather deals with probabilities, based on a reasonable and prudent view of the circumstances. *Draper,* 358 U.S. at 313, 79 S.Ct. 329.[7]

### III.

### *STATEMENTS ATTRIBUTED TO APPELLANT*

■ When Officer Alvarado entered the store, accompanied by other officers, he told appellant that he possessed a search warrant, and conversing in Spanish, asked if there were drugs in the store. It is undisputed that appellant answered "yes," and in response to a further inquiry, nodded towards a counter. He was advised he was not under arrest, but was later restrained by handcuffs.

Appellant, relying upon *Miranda v. Arizona,* 384 U.S. 436, 439, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), contends that his

---

7. Given our view, we do not reach the challenge premised on *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

statements were the product of custodial interrogation. The record supports the view that initially appellant was asked at least two questions which could reasonably be expected to elicit an incriminating response. *See Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). What is critical to this inquiry is whether, during the execution of a search warrant, appellant was in custody at the time the statements were made. Under *Miranda*, a person subjected to a custodial interrogation must be informed of his right to remain silent, that any statement he makes can be used in evidence against him, and that he has a right to the advice of an attorney. This court has explained that "custody [can be] the linchpin of the *Miranda* requirements." *Calaway v. United States*, 408 A.2d 1220, 1224 (D.C.1979). However, the Supreme Court has also held that not every questioning by the police of citizens is custodial interrogation. *See, e.g., Beckwith v. United States*, 425 U.S. 341, 347, 96 S.Ct. 1612, 48 L.Ed.2d 1 (1976) (focus of investigation on suspect is not the type of encounter to implicate *Miranda*); *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (where presence at police station was voluntary, interrogation was non-custodial). "[O]nce the investigating officer physically deprives the suspect of his freedom of action in any significant way or, under the circumstances, leads him to believe, as a reasonable person, that he is so deprived," the individual is in custody. *Miley v. United States*, 477 A.2d 720, 722 (D.C.1984) (citing *Miranda*, 384 U.S. at 444, 86 S.Ct. 1602).

Appellant, however, is in nearly the identical situation that we addressed in *In re E.A.H.*, 612 A.2d 836, 838 (D.C.1992), where we rejected the "notion that a person was in custody for *Miranda* purposes because he was questioned during the execution of a search warrant in his home,

even though he was not free to leave." *Id.* (citing *Tyler v. United States*, 298 A.2d 224, 226–27 & n. 4 (D.C.1972); *Wells v. United States*, 281 A.2d 226, 228 (D.C. 1971)). We pointed out that such persons are indeed seized, but are in a similar position as persons stopped and questioned pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Accordingly, we find no error in the admission of appellant's initial statements since he was not being subjected to "custodial interrogation."

Turning to appellant's later statements, it is certain that his response to subsequent police inquiries after he was arrested were protected by *Miranda*. Thus, the issue to be resolved as to these statements is whether appellant was adequately warned of his rights, *Miranda, supra*, 384 U.S. at 471, 86 S.Ct. 1602; *see also Dickerson v. United States*, 530 U.S. 428, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000), and whether his waiver of these protections was voluntary, knowing and intelligent. *See In re M.A.C.*, 761 A.2d 32, 36 (D.C. 2000). In denying the motion to suppress these statements, the trial judge expressly credited the officer's testimony that appellant was orally advised of his rights, and said at the time that he understood them, and voluntarily chose to waive them. In reviewing this contention, we conclude there is a substantial basis for the trial judge's findings and her ruling. *Brown v. United States*, 590 A.2d 1008, 1020 (D.C. 1991); *see also Goldston v. United States*, 562 A.2d 96, 98 (D.C.1989). Accordingly, we find no error.

*Affirmed.*