**Carlton J. BEACHUM, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 10–CF–325.**

District of Columbia Court of Appeals.

Submitted April 21, 2011.

Decided May 5, 2011.

William P. Farley, appointed by the court, was on the brief for appellant.

Ronald C. Machen Jr., United States Attorney, with whom Elizabeth Trosman, Chrisellen R. Kolb, Erik Kenerson, and L. Jackson Thomas II, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ, Associate Judge, and FERREN and STEADMAN, Senior Judges.

RUIZ, Associate Judge:

After the Superior Court denied his pretrial motions, appellant, Carlton J. Beachum, entered into a conditional plea of guilty to one count of unlawful possession of a firearm by a convicted felon, one count of possession of an unregistered firearm, and one count of unlawful possession of ammunition. On appeal, he challenges the trial court's denial of his pretrial motions to suppress evidence and for severance from a co-defendant, as well as the denial of his request for an overnight continuance to produce a defense witness. For the following reasons, we affirm his convictions.

## I.

Appellant and his co-defendant, Asia Copeland, were arrested in the 5100 block of Fitch Street, Southeast, on August 26, 2009. At about 1:00 a.m. that night, MPD officers responded to a complaint of loud noise coming from a silver vehicle at 5107 Fitch Street. Upon arriving on the scene, the officers found appellant and Copeland seated on the curb within three feet of a silver Jeep Cherokee, from which loud music was playing. Between appellant and Copeland was an unsealed bottled of Patron tequila and two clear plastic cups smelling of alcohol. An officer asked appellant and Copeland who owned the Jeep, to which Copeland responded that the Jeep and "everything in it" belonged to her.[1] Another officer shined his flashlight into the left rear passenger seat and observed "the extended clip of a handgun sticking ... out of a tan duffle bag." Appellant and Copeland were taken into custody, and a crime scene search officer later recovered the firearm.

By indictment dated September 9, 2009, appellant was charged with carrying a pistol without a license, unlawful possession of a firearm by a felon,[2] possession of an unregistered firearm, unlawful possession of ammunition, unlawful possession of a controlled substance (marijuana), and possession of an open container of alcohol. On October 2, 2009, appellant moved to sever the charges against defendant Copeland, arguing that he had a *bona fide* need to call Copeland as a witness in his defense. Also on October 2, 2009, appellant moved to suppress evidence and statements obtained from him during his arrest. The government opposed both motions.

On October 30, 2009, the trial court held a hearing on appellant's motion for severance. At the hearing, appellant's counsel proffered that he would seek to call Copeland to testify at trial about the statement she made on the night of the arrest that the Jeep and "everything in it" were hers. Copeland's counsel indicated that Copeland was not willing to testify on appellant's behalf, and the court noted that it could not grant a severance if the co-defendant was unwilling to testify. Appellant then proposed admitting Copeland's out of court statement under an exception to the hearsay rule, either as a statement against penal interest, a present sense impression, or an excited utterance. Asking the parties to brief the issue, the court denied "the motion to sever for now."[3]

1. Appellant did not make any statement about the ownership of the Jeep.

2. Appellant had been previously convicted of possession with intent to distribute marijua-na, destroying property, and attempted possession of a prohibited weapon.

3. In denying the motion to sever, the court explained that if the statement was admissible under a hearsay exception, the statement

The matter was continued until the November 30th trial date.

On November 30, 2009, the government dismissed the charges against appellant of carrying a pistol without a license, possession of a controlled substance, and possession of an open container of alcohol. The court then heard appellant's suppression motion, starting with testimony from appellant to establish his standing to contest the search of the Jeep.[4] The court found that appellant had some expectation of privacy in the car and, therefore, it allowed appellant to challenge the search. In turning to the legality of the search, the government presented testimony from MPD Officer Thomas O'Donnell, who recounted the circumstances of the search. Officer O'Donnell testified:

> As Officer Gomez was asking, you know, who the vehicle belonged to and if there was anything in the vehicle[,] I went around to the driver's side and was shining my light in first the driver's side, the driver's door and then in the back left passenger seat, and the windows were all down ... and right as I shined my flashlight into the rear passenger seat I

noticed what I immediately recognized as the extended clip of a handgun sticking straight out of a tan duffle bag.

After the government rested, appellant provided a somewhat different account of the search. He testified that he and Copeland were seated in a grassy yard, drinking tequila with a woman named "Vikki," who was seated inside the silver Jeep.[5] While they were drinking, a police squad car arrived to investigate loud music coming from another silver vehicle that was parked in front of 5107 Fitch Street.[6] The squad car left and about ten minutes later, a second set of officers arrived. Appellant testified that four officers "jumped out" and "immediately" began searching the Jeep while another officer handcuffed appellant and Copeland. He stated that his duffle bag in the Jeep had been zipped closed and that it was impossible to see inside it.

In announcing its findings, the court credited the testimony of Officer O'Donnell, and found that "the gun was in plain view and that the officer was able to see it by shining his flashlight into the car...." The court accordingly denied appellant's

---

could be admitted through the testimony of the officer who heard it, without the need to sever the trials in order to call Copeland as a witness. The trial court asked appellant's counsel to brief the issue, but he never provided supplemental briefing to the court on this point.

4. Appellant testified that the Jeep was rented, that he had permission to drive it, and that he drove it and parked it on Fitch Street on the night of his arrest. On cross-examination, he stated that he did not hear Copeland claim the car was hers and he acknowledged that he did not respond when officers asked him to whom the car belonged.

5. Just before appellant testified, his counsel informed the court that he had a potential witness—a woman (presumably, "Vikki") who was in the Jeep when appellant and Copeland were arrested—who was not available to testify then but could testify the next

day. Appellant's counsel proffered that this information had just come to his attention "a half an hour ago, 20 minutes ago," so he did not subpoena the witness or otherwise arrange for her to testify. The court responded that it would not delay the hearing: "This is not a surprise. You filed the motion. You knew what the issue was. Your client knew what the issue was. So, I mean if you actually had somebody in the car—if there's truly somebody who was in the car[,] that's about as central as you get...." Believing that appellant was "playing games," the court told appellant's counsel to present his evidence.

6. Appellant indicated that a group of "five or six, seven girls" had been playing music in a parked silver Chrysler. The group scattered and the Chrysler drove away when the squad car arrived and shined its light on them.

motion to suppress. Appellant then agreed to a conditional plea of guilty to one count of unlawful possession of a firearm by a convicted felon, one count of possession of an unregistered firearm, and one count of unlawful possession of ammunition. On February 16, 2010, the court sentenced appellant to twenty-four months' incarceration for unlawful possession of a firearm by a felon, twelve months' incarceration for possession of an unregistered firearm, and twelve months' incarceration for unlawful possession of ammunition, all sentences to run concurrently. Appellant filed a timely notice of appeal on March 15, 2010.

## II.

■ Appellant challenges the trial court's denial of his pretrial motion for severance, his pretrial motion to suppress, and his request during the suppression hearing for an overnight continuance to allow a second witness to testify.[7] The government responds that appellant's guilty plea did not properly preserve these issues, and therefore, he has waived them on appeal.

■ As we have often explained, "[a] defendant who enters a guilty plea ordinarily waives all non-jurisdictional defects in the proceedings below on appeal." *Collins v. United States*, 664 A.2d 1241, 1242 (D.C.1995) (citing *United States v. Gines*, 964 F.2d 972, 977 (10th Cir.1992); *United States v. Caperell*, 938 F.2d 975, 977 (9th Cir.1991)). However, pursuant to Superior Court Criminal Rule 11, a criminal defendant, "[w]ith the approval of the Court and the consent of the government," "may enter a plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion."[8] Super. Ct.Crim. R. 11(a)(2). The requirement of a written reservation helps to "document that a particular plea was in fact conditional, and will identify precisely what pretrial issues have been preserved for appellate review." *Demus v. United States*, 710 A.2d 858, 859 (D.C.1998) (quoting Advisory Committee Notes to Rule 11, Fed. R.Crim. P., 97 F.R.D. 245, 283 (1983)). A defendant's "[f]ailure to specify a particular pretrial issue in the written plea agreement will preclude raising that issue on appeal." *Collins*, 664 A.2d at 1242.

Here, appellant entered into a written plea agreement whereby he reserved "his right to appeal the motion," yet there is no clear indication in the plea agreement as to which motion was the subject of his writ-

---

7. Although, as the government points out, defense counsel never actually *requested* a continuance, we think that the record fairly reflects that the trial judge understood that is what defense counsel wanted, as the judge said, "I'm not waiting. I mean the trial date's been set."

8. Contrary to appellant's assertion, Rule 11 does not define the jurisdiction of this court. *See In re Peak*, 759 A.2d 612, 618 (D.C.2000) ("The writing requirement of Rule 11 is not jurisdictional, but rather in the nature of a right which can be waived by the government."). It is merely a device by which the government and the court may assent to a defendant's reservation of an adverse pretrial

disposition, which they otherwise are under no obligation to do. *See United States v. Fisher*, 772 F.2d 371, 374 (7th Cir.1985) ("[Federal Rule of Criminal Procedure] 11(a)(2) explicitly grants both the court and the government veto power over entry of such a [conditional] plea, and its legislative history indicates that it was adopted primarily for the benefit of the court and prosecutors, not defendants."). Therefore, whereas a defendant ordinarily waives all non-jurisdictional challenges when pleading guilty, a conditional guilty plea under Rule 11(a)(2) indicates an agreement of the parties and the court to allow the defendant to preserve a particular issue for appellate review.

ten reservation. As a consequence, appellant argues that *all* three pretrial motions—his motion for severance, his motion for suppression, and his request for a continuance—are within the scope of his reservation and thus properly preserved for appeal. The government, contrarily, asserts that *none* of appellant's motions has been preserved for our review. We think the appropriate course lies somewhere in between the two, as the record seems clear that the parties certainly intended that denial of at least one pretrial motion would be preserved for appeal.

In certain cases, we have eased the precise procedural formalities of Rule 11(a)(2) where the purpose of the rule was nonetheless effectuated. In *Casey v. United States*, 788 A.2d 155 (D.C.2002), we emphasized that "[t]he purpose of enforcing the written requirement is to avoid uncertainty about the pretrial ruling reserved for appeal and to assure that all parties and the court had agreed." *Id.* at 157 (citing *Demus*, 710 A.2d at 859). There, the defendant's plea agreement did not include a written reservation specifying the adverse pretrial ruling, but we determined that the purpose of the requirement that the reservation be in writing was met because the "transcript show[ed] clearly that all parties agreed that the plea was conditional and that the suppression issue was the only issue reserved." *Id.* at 158. Similarly, in *In re Peak,* the appellant entered a conditional guilty plea reserving "her right to appeal the legal issues to date," which was signed by her, her counsel, the private prosecutor,[9] and the trial judge. 759 A.2d at 616. We determined that the conditional plea was effective to preserve challenges to all the adverse pretrial rulings, despite the general terms of the reservation, be-

cause the parties all assented to the agreement and they "were in a position to know which pretrial rulings had been made which could form the basis for the appeal." *Id.* at 618. Other courts have likewise looked beyond the formalities of the plea agreement in similar cases. *See, e.g., United States v. Yasak,* 884 F.2d 996, 1000 (7th Cir.1989) ("While there is no special writing reserving [the defendant's] right to appeal, we nonetheless are persuaded that [Federal Rule of Criminal Procedure] 11(a)(2)'s intent and purpose have been fulfilled.").

In this case, the plea agreement explicitly reserved appellant's "right to appeal the motion," but it is not facially apparent which of three denied motions was intended. In that sense, the case before us is slightly different from *Casey,* where the plea agreement had no written reservation, and *Peak,* where the plea agreement reserved "the legal issues to date." Nonetheless, the rationale in those cases persuades us that appellant's challenge to the denial of his suppression motion was properly preserved. Looking beyond the formalities of the agreement here, the hearing transcript demonstrates that the parties and the court intended for the plea agreement to reserve appellant's right to appeal the denial of his suppression motion. Before the suppression hearing, appellant's counsel indicated that the suppression motion would be a "dispositive motion," to which the prosecutor added his understanding that appellant would "be pleading to the indictment after this if the motion is denied." After the court denied the suppression motion, appellant's counsel reiterated that the motion was dispositive and proffered that

---

**9.** The trial court allowed private attorneys to prosecute the criminal contempt charge against the appellant. *Peak,* 759 A.2d at 616. We held that "a private attorney appointed to prosecute contempt actions, consistent with the provisions of Super. Ct.Crim. R. 11(a)(2), may consent to a conditional plea agreement entered by the contemnor." *Id.* at 617.

appellant would, in fact, plead guilty. During the ensuing plea colloquy, both parties affirmed for the court that the plea was conditioned on appeal of the denial of the suppression motion, and the court explained to appellant: "You're not giving up your right to appeal my ruling on the motion, okay, but everything else you are giving up your right." Because the plea colloquy occurred immediately after the court denied appellant's suppression motion, and because the suppression motion was intended to be dispositive, we think that all parties to the plea—the prosecutor, the defense counsel, appellant, and the court—understood that "the motion" referred to in the plea colloquy and the plea agreement was appellant's suppression motion. *See Yasak,* 884 F.2d at 1000 ("The plea hearing transcript plainly shows that both parties agreed to the conditional plea, that the district court accepted the plea, and that the court understood its ruling on [the defendant's] motion to dismiss was the specific (and dispositive) issue for appeal.").

When viewed in the context of the transcript, the plea agreement satisfied the purposes of Rule 11(a)(2) because it is clear that the parties agreed that appellant's plea was conditional and that the suppression issue was preserved for appellate review. *See Casey,* 788 A.2d at 158. Under the circumstances of this case, then, we are confident that the suppression motion was the particular motion intended by the parties and the court to be within the scope of the plea agreement, and thus the only issue properly reserved for our review. We think, moreover, that appellant's claim concerning the suppression motion necessarily includes his argument that the trial court should not have decided the motion without giving him an opportunity to present an additional witness the following day. Accordingly, we decline to consider appellant's claim of error with respect to the motion to sever, but we will consider the merits of appellant's claims relating to the denial of his suppression motion.

## III.

■ Appellant argues that the trial court erred in denying his motion to suppress evidence because the officers lacked probable cause to search the Jeep in that "[i]t is not *per se* against the law to have a firearm in one's car" and the officers never asked whether the gun was licensed. The government responds that the officers had probable cause to believe that a weapons offense was being committed, and therefore the search was proper.

■ "Our review of a trial court's denial of a motion to suppress is limited." *Jones v. United States,* 972 A.2d 821, 824 (D.C.2009). This court "must defer to the [trial] court's findings of evidentiary fact and view those facts and the reasonable inferences therefrom in the light most favorable to sustaining the ruling below." *Id.* (quoting *Joseph v. United States,* 926 A.2d 1156, 1160 (D.C.2007)). "In particular, we must give deference to the trial court's findings of fact as to the circumstances surrounding the appellant's encounter with the police and uphold them unless they are clearly erroneous." *Shelton v. United States,* 929 A.2d 420, 423 (D.C.2007) (quoting *Prince v. United States,* 825 A.2d 928, 931 (D.C.2003)). However, "[w]hile factual findings will not be disturbed if supported by substantial evidence, conclusions of law are reviewed *de novo.*" *Singleton v. United States,* 998 A.2d 295, 299 (D.C.2010) (quotation omitted). Whether or not police had probable cause is a question of law. *In re T.H.,* 898 A.2d 908, 912 (D.C. 2006) (citing *United States v. Watson,* 697 A.2d 36, 38 (D.C.1997)). "Essentially, our

role as an appellate court 'is to ensure that the trial court had a substantial basis for concluding' that no constitutional violation occurred." *Jones,* 972 A.2d at 824 (quoting *Joseph,* 926 A.2d at 1160); *see Howard v. United States,* 929 A.2d 839, 844–45 (D.C.2007) ("This court must ensure that the trial court has a substantial basis for concluding that no constitutional violation occurred." (internal quotation marks omitted)).

■■■■ Generally, "[a] search conducted without a warrant is 'per se unreasonable' under the Fourth Amendment unless it falls within a few specific and well-established exceptions." *Basnueva v. United States,* 874 A.2d 363, 369 (D.C.2005) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). One such well-established exception is the plain view exception, which allows a police officer to seize evidence without a warrant if the evidence is observed in plain sight when (1) the officer legally arrived at the place from which the evidence could be plainly viewed; (2) the evidence's incriminating character is "immediately apparent"; and (3) the officer had a "lawful right of access to the object itself." *Umanzor v. United States,* 803 A.2d 983, 998–99 (D.C.2002). Of course, "plain view *alone* is never enough to justify the warrantless seizure of evidence. Rath-

er, the officer must have prior justification for the initial intrusion." *Hicks v. United States,* 705 A.2d 636, 640 (D.C.1997) (citations omitted) (internal quotation marks omitted). We have stated that where an officer is legally in a position to observe an object in plain sight for which he has probable cause to associate with a criminal activity, he has a lawful right of access to the object and may seize it immediately.[10] *See Umanzor,* 803 A.2d at 999.

Here, Officer O'Donnell testified that he was standing on a public street responding to a complaint of loud music coming from a silver vehicle. Upon shining his flashlight through the open left rear passenger window of the silver Jeep, he "noticed what [he] immediately recognized as the extended clip of a handgun sticking straight out of a tan duffle bag," and then seized the weapon. Appellant offered a different version of the police action, but the trial judge credited the officer's testimony. In light of that determination, the trial court's finding that the handgun was in plain view is supported by the evidence and not clearly erroneous. Because Officer O'Donnell was lawfully in a position from which he could observe the handgun and the handgun's incriminating character was immediately apparent to him, we conclude that Officer O'Donnell had probable cause to believe that a weapon offense was taking place.[11] *See Johnson,* 7 A.3d at 1033 ("The sight of

---

10. Probable cause to justify the seizure of physical evidence, as we have said, is "a flexible, common-sense standard, which merely requires that the facts available to the officer would warrant a … [person] of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Umanzor,* 803 A.2d at 998 (internal quotation marks omitted) (emphasis omitted) (alterations in original). Whether an officer had probable cause is measured by the totality of the circumstances. *See Chavez–Quintanilla v. United States,* 788 A.2d 564, 567 (D.C.2002).

11. Appellant seems to contend that Officer O'Donnell did not have probable cause because after *District of Columbia v. Heller,* 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), it is no longer *per se* illegal to carry a firearm and, therefore, the handgun's incriminating character was not immediately apparent to the officer without knowing whether appellant or Copeland had a license for the handgun. Appellant cannot prevail on this argument, which he raises for the first time on appeal, and we, therefore, review for plain error. *See United States v. Olano,* 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). "We have rejected claims that the

the handgun was evidence that a weapons offense was being committed...."). Officer O'Donnell thus had a lawful right of access to the handgun, and could properly seize the weapon without a warrant. *See Umanzor*, 803 A.2d at 999. Accordingly, the evidence was not obtained in violation of the Fourth Amendment, and the trial court appropriately denied appellant's motion to suppress.

 Moreover, appellant cannot prevail on his assertion that the trial court erred in deciding his suppression motion without allowing him to present an additional witness the following day. "[A] party seeking a continuance to obtain witnesses must at a minimum show (1) who they are, (2) what their testimony would be, (3) the relevance and competence of such testimony, (4) that the witnesses can probably be obtained if the continuance is granted, and (5) that due diligence has been used to obtain their attendance at trial." *O'Connor v. United States*, 399 A.2d 21, 28 (D.C.1979) (internal citations omitted). Appellant cannot meet this burden. Although, as the trial court recognized, a person who had been inside the Jeep when the officers seized the weapon could be a "central" witness, there is no indication in the record that this witness—presumably "Vikki"—would in fact choose to testify (there was a suggestion that she might invoke the Fifth Amendment if she had been in the car where the weapon was found), and there was no proffer from appellant about what the witness's testimony would be and how it would be relevant to the issue of suppression. We likewise see no reason why appellant could not have proceeded to trial the following day, called "Vikki" to testify, and then renewed his suppression motion in light of her testimony. Because appellant did not satisfy the "minimum" requirements for seeking a continuance, and cannot show prejudice from its denial, we discern no abuse of discretion in the court's decision to hear and deny appellant's suppression motion without allowing additional time for appellant to produce the additional witness. *See Daley v. United States*, 739 A.2d 814, 817 (D.C.1999) (noting that denial of request for continuance is reviewed for abuse of discretion).

For the foregoing reasons, appellant's convictions are hereby

*Affirmed.*

[carrying a pistol without a license], [possession of an unregistered firearm], and [unlawful possession of ammunition] statutes are facially invalid in light of the Supreme Court's decision in *Heller*." *Little v. United States*, 989 A.2d 1096, 1100 (D.C.2010). *Heller* does not address, and we have not decided, whether the Second Amendment protects the possession of handguns for other than defensive use in the home. *See Wooden v. United States*, 6 A.3d 833, 841 (D.C.2010) (declining to revisit, on plain error review, whether Second Amendment protects possession of weapon for use other than "self-defense in one's own home"); *Mack v. United States*, 6 A.3d 1224, 1236 (D.C.2010) (same). Thus, for purposes of the suppression motion in this case, we cannot say that it should have been plain to the trial court, as a matter of law, that a reasonable officer could not have probable cause, upon seeing a gun with an extended clip inside a car, to believe that the gun was contraband that could be seized as evidence of an offense.

Appellant also seems to argue that the handgun's incriminating character could not be immediately apparent to Officer O'Donnell because he saw only the gun clip and not the entire gun itself. We are not persuaded. The sight of a handgun in the backseat of a car, no matter what part of the handgun, undoubtedly gives a reasonable police officer probable cause to believe that what he is observing is an unlawful weapon. *See Johnson v. United States*, 7 A.3d 1030, 1033 (D.C.2010).