Mischell D. WHITE, Appellant,

v.

UNITED STATES, Appellee.

No. 97–CF–124.

District of Columbia Court of Appeals.

Argued Oct. 23, 1997.

Decided June 11, 1998.

Daniel K. Dorsey, Washington, DC, appointed by the court, for appellant.

Joseline A. Peña, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney at the time the brief was filed, and John R. Fisher and Roy W. McLeese, III, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and SCHWELB, Associate Judges, and BELSON, Senior Judge.

TERRY, Associate Judge:

Appellant was convicted of carrying a pistol without a license (CPWL), in violation of D.C.Code § 22–3204(a) (1996). His sole contention on appeal is that the government's evidence was insufficient to sustain his CPWL conviction because the pistol, when recovered by the police, was in a box in the back of an ice cream truck which he had been driving, and thus was not "on or about" his person as required by the statute. We affirm.[1]

---

1. Appellant was also convicted of possession of a prohibited weapon, possession of an unregistered firearm, and unlawful possession of ammunition. On appeal he does not challenge any of those convictions.

## I

### A. The Government's Evidence

In the early morning hours of February 20, 1996, Officers Robert Wigton and Mark Wood were on plainclothes duty in an unmarked car. At about 1:45 a.m. they were following a white ice cream truck with two occupants when they saw it run a yellow traffic light and commit other traffic infractions.[2] They decided to stop the truck, but before they did so, the officers broadcast a request over the police radio for a marked police car to assist them. Then, while the officers were waiting for backup assistance, the truck stopped near the corner of Sixth and Edgewood Streets, N.E. As its driver, appellant White, was parking the truck, a marked police cruiser responding to the officers' earlier call pulled up in front and blocked the truck's path.

The two plainclothes officers parked their car several feet behind the truck. Officer Wigton, who was in the passenger seat, glanced at the truck's large side-view mirror and saw movement in the forward section of the truck. He saw White look at the officers' unmarked car and then, accompanied by the other occupant, move toward the back of the truck. The officers got out of their car and approached the truck, Wigton on the passenger side and Wood on the driver's side. As they approached, one of the truck's occupants switched on its interior light.

Looking into the lighted interior through the customer service window on the truck's passenger side,[3] Officer Wigton saw White reach into a cardboard box containing bags of potato chips, pull his right hand away from the box, and then move back to the front section of the truck. The officer did not see any object in White's hand; however, after White withdrew his hand, Wigton saw the handle of a gun protruding from the box.[4]

While White's hand was inside the box, the other occupant, Jamil Ross, was standing approximately six feet behind White in the forward section of the truck.

Both White and Ross were arrested and taken into custody. Moments later Officer Richard Griffin, a crime scene evidence technician, took photographs of the truck and recovered the gun from the potato chip box. The gun, which was operable and loaded with sixteen rounds of ammunition, was processed for fingerprints. No usable prints were recovered from the handle of the gun. Three prints were recovered from the magazine, but none of them matched those of Mr. White, Mr. Ross, or Norman Thompson, the owner of the truck.

Finally, the government presented evidence that White was not licensed to carry a gun and that the gun seized from the truck was not registered in the District of Columbia.

### B. The Defense Evidence

White testified that on the day before his arrest he worked in the ice cream truck from 9:00 a.m. until 9:30 p.m. His job was to drive the truck while two other persons stayed at the service window to serve customers. White said that, except to lock the service window at the end of his shift, he had not been in the back of the truck at all that day. After work White drove the truck to a friend's house to play cards. At some point after leaving the card game, White picked up Jamil Ross, and the two of them rode around for thirty or forty minutes. Finally, White drove to Edgewood Street, where he lived, intending to park the truck in front of his house. As he started to park, Mr. Ross went to the back of the truck to get some candy. Then White saw a marked police car approaching, so he stopped the truck and turned off the engine. The officers in the

---

2. The reasons for the officers' pursuit of the truck were not disclosed to the jury. At a pre-trial suppression hearing, however, Officer Wigton testified that he and his partner were maintaining a surveillance of a "crack house" when they saw "a big van ... an ice cream truck" pull up in front. The driver got out and entered the house. When he returned to the truck a few minutes later, the officers decided to follow him.

3. The service window, a small sliding window with bars, was clean enough for Officer Wigton to see into the truck.

4. Officer Wigton testified that, on the basis of his experience, he believed that the object protruding from the box was the handle of a nine-millimeter pistol.

police car ordered him to get out of the truck, and he complied.

White said that he did not see Mr. Ross or anybody else in the ice cream truck that day with a gun and did not know there was a gun in the truck. He concluded, however, that it "had to be" Mr. Ross who put the gun in the potato chip box, since he did not put it there himself.

### C. *The Jury Instructions*

With respect to the charge of CPWL, the judge instructed the jury, in pertinent part, as follows:

> A person who carries a pistol on his person if he knowingly has direct physical control over it. A person carries a pistol about his person if he knowingly has both the power and the intention at a given time to control it.
>
> To prove that the defendant had the power to exercise control over a pistol, the Government must prove that the pistol was convenient of access to the defendant and within his reach. Mere presence near a pistol or mere knowledge of its location is not enough to show carrying.

This instruction, in almost identical language, was also typed out and given to the jury. Neither the prosecutor nor defense counsel objected to the instruction.

### II

 In considering a claim of insufficient evidence, this court "must review the evidence in the light most favorable to the government, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, and making no distinction between direct and circumstantial evidence." *Curry v. United States,* 520 A.2d 255, 263 (D.C.1987) (citations omitted); *accord, e.g., Nelson v. United States,* 601 A.2d 582, 593 (D.C.1991)

(citing cases). "It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may properly take the case from the jury." *Williams v. United States,* 357 A.2d 865, 867 (D.C.1976) (citations omitted); *accord, e.g., Frendak v. United States,* 408 A.2d 364, 371 (D.C.1979). In the present case, we must determine "whether it can be inferred from the facts that appellant had the knowledge and control of the [pistol] necessary to sustain a conviction under § 22–3204." *Porter v. United States,* 282 A.2d 559, 560 (D.C.1971); *see Kenhan v. United States,* 263 A.2d 253, 254 (D.C.1970).

The CPWL statute provides, in pertinent part:

> No person shall carry within the District of Columbia either openly or concealed *on or about their* [sic] *person,* a pistol, without a license issued pursuant to District of Columbia law. . . .

D.C.Code § 22–3204(a) (emphasis added); *see Ray v. United States,* 620 A.2d 860, 864 (D.C.1993) (listing elements of CPWL). White contends that the government failed to establish a violation of section 22–3204 because it did not prove that he carried the weapon "on or about" his person.

 This case went to the jury on two alternative theories of "carrying."[5] First, the government argued that White had actual possession of the pistol and thereby carried it "on" his person. Officer Wigton testified that he saw White reach his hand into the potato chip box, then withdraw it and walk away. After White returned to the front portion of the truck, Wigton saw a gun in the box. Although the officer acknowledged that he did not actually see White holding the gun, a jury, accepting his testimony, could reasonably infer that there was a gun in White's hand—*i.e.,* that he was in actual possession of the gun[6]—and that he

---

**5.** Since the jury returned a general verdict of guilty on the charge of CPWL, the conviction may be affirmed if the evidence was sufficient to support either theory. *See Griffin v. United States,* 502 U.S. 46, 49–51, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *Roy v. United States,* 652 A.2d 1098, 1103 (D.C.1995); *cf. Tyler v. United States,* 495 A.2d 1180, 1182 (D.C.1985) (rejecting claim of error in failure to give a special unanim-

ity instruction on ground that "appellant could not have been prejudiced, because it was unnecessary for the jury to agree" on whether he was a principal or an aider and abettor).

**6.** "A defendant who maintains direct physical control over an object at a given moment has actual possession of such object." *Campos v. United States,* 617 A.2d 185, 187 (D.C.1992) (cita-

secreted it in the box just as the police arrived.

■ Alternatively, the government maintained that White had constructive possession and thus carried the pistol "about" his person. To establish constructive possession, the government must show, by either direct or circumstantial evidence, that the defendant knew of the presence of the weapon, that he had dominion and control over it, "and that he intended to guide its destiny." *Guishard v. United States*, 669 A.2d 1306, 1312 (D.C.1995) (citations and internal quotation marks omitted); *see (William) Brown v. United States*, 546 A.2d 390, 394 (D.C.1988) (citing cases). In the case at bar these elements were established by the government's evidence.

Immediately after the police car stopped in front of the ice cream truck and the police officers started to approach it, White walked to the back of the truck and reached into the potato chip box. From this evidence the jury, knowing that a gun was later found in that box, could reasonably infer that White was trying to hide the gun from the police, and that therefore he had knowledge of its presence and both the intent and the ability to guide its destiny.[7] Thus the jury could permissibly find that White was in constructive possession of the gun. *See, e.g., (William) Brown v. United States, supra*, 546 A.2d at 392; *Logan v. United States*, 489 A.2d 485, 491–492 (D.C.1985); *Tucker v. United States*, 421 A.2d 32, 33–34 (D.C.1980); *Johnson v. United States*, 309 A.2d 497, 499 (D.C.1973), *cert. denied*, 416 U.S. 951, 94

S.Ct. 1960, 40 L.Ed.2d 301 (1974); *Porter v. United States, supra*, 282 A.2d at 560–561; *Waterstaat v. United States*, 252 A.2d 507, 509 (D.C.1969). *See also (Bobby) Brown v. United States*, 691 A.2d 1167, 1168 (D.C. 1997) (when defendant was arrested on sidewalk in front of his house, evidence was sufficient to prove that he was in constructive possession of pistol found in his second-floor bedroom).

■ Constructive possession by itself, however, is not sufficient to sustain a CPWL conviction. *Henderson v. United States*, 687 A.2d 918, 921 & n. 6 (D.C.1996). Because "'possession' is a broader concept than to 'carry on or about the person,'" *Halicki v. United States*, 614 A.2d 499, 503 n. 9 (D.C. 1992), the government's evidence must go beyond mere proof of constructive possession and must show that the pistol was "in such proximity to the person as to be convenient of access and within reach." *(Pomeroy) Brown v. United States*, 58 App. D.C. 311, 312, 30 F.2d 474, 475 (1929) (defining the phrase "concealed about his person" as used in an earlier version of section 22–3204);[8] *see Henderson, supra*, 687 A.2d at 921; *Deneal v. United States*, 551 A.2d 1312, 1317 (D.C.1988) (concepts of "possession" and "carrying" are similar but not identical).[9]

■ In applying the "convenient of access and within reach" standard, we must keep in mind the policy underlying the CPWL statute. *(Pomeroy) Brown, supra*, 58 App. D.C. at 312, 30 F.2d at 475. That statute was intended "to prevent a person's having a

tion omitted). Direct physical control would surely include any attempt to conceal or discard the object. *See McGriff v. United States*, 705 A.2d 282, 290 (D.C.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1542, 140 L.Ed.2d 690 (1998).

7. This court has held that mere proximity to the contraband item "may establish a prima facie case of constructive possession if it is colored by evidence linking the accused to an ongoing criminal operation of which that possession is a part." *Curry v. United States, supra*, 520 A.2d at 263 (citations omitted); *see (William) Brown, supra*, 546 A.2d at 395 n. 3 (discussing *Curry* ). *See also Earle v. United States*, 612 A.2d 1258, 1265–1266 (D.C.1992). In the instant case, however, there was no evidence linking the gun to any ongoing criminal activity, and thus the govern-

ment had to prove constructive possession by other evidence—*e.g.*, by establishing, as it did, that the gun was found in the potato chip box just moments after White reached into that very same box.

8. "The wording of the statute has been slightly changed since the *Brown* opinion was written, but the principle remains the same." *Wilson v. United States*, 91 U.S.App. D.C. 135, 136, 198 F.2d 299, 300 (1952).

9. What we say here applies, of course, only to CPWL cases based on a theory of constructive possession. If the government proves actual possession, then it necessarily proves, in addition, that the gun is convenient of access and within reach.

pistol or dangerous weapon so near him or her that he or she could promptly use it, if prompted to do so by any violent motive." *Henderson, supra,* 687 A.2d at 922 n. 7 (quoting CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Comment to No. 4.70 (4th ed.1993)); *see Bsharah v. United States,* 646 A.2d 993, 998–999 (D.C.1994) (discussing legislative intent); *(Pomeroy) Brown, supra,* 58 App. D.C. at 312, 30 F.2d at 474 (purpose of predecessor statute was "the protection of the public from the menace of concealed 'deadly or dangerous' weapons"). Therefore, our focus must be on whether "the location of the [pistol] ... presented an obstacle such as to deny appellant convenient access to the weapon or place it beyond his reach." *Porter, supra,* 282 A.2d at 560–561; *see Henderson, supra,* 687 A.2d at 922.

■ White argues that the gun was not within his reach because, to gain access to it, he would have had "to stop the truck ... physically get out of his seat ... move to the rear of the truck and dig into a box." He relies principally on the *Henderson* case, but that case is readily distinguishable on its facts. In *Henderson* we held that the gun was not "convenient of access and within reach" because it was locked in the trunk of the defendant's car, and in order to retrieve it, the defendant "would have had to alight from the car, walk to the trunk, open the trunk, and pick up the pistol." 687 A.2d at 922. Contrarily, in the instant case, when the officers saw White moving about inside the ice cream truck, the truck was stopped and the gun was in an open box. Moreover, being an ice cream truck, it was specifically designed to allow the driver to walk easily to the rear section, just a few steps away from the driver's seat. Thus a jury could reasonably find that the location of the gun did not present any obstacle denying White convenient access to the weapon or placing it beyond his reach. *See Porter, supra,* 282 A.2d at 560–561.

Because the evidence showed that, at different times, White was in both actual and constructive possession, and that, while he was in constructive possession, the gun was convenient of access and within his reach, the judgment of conviction is

*Affirmed.*