UNITED STATES, Appellant,

v.

Phillip M. GLOVER, Appellee.

No. 03–CO–1030.

District of Columbia Court of Appeals.

Argued April 27, 2004.

Decided June 10, 2004.

John P. Mannarino, Assistant United States Attorney, with whom Roscoe C. Howard, Jr., United States Attorney, and John R. Fisher, Elizabeth Trosman and Gilberto Guerrero, Assistant United States Attorneys, were on the brief, for appellant.

Lorenzo C. Fitzgerald, Jr. filed a brief for appellee.

Before STEADMAN and GLICKMAN, Associate Judges, and KING, Senior Judge.

GLICKMAN, Associate Judge:

The United States appeals pursuant to D.C.Code § 23–104(a)(1) (2001) from an order of the trial court granting Phillip Glover's motion to suppress evidence in his prosecution for possession of marijuana with intent to distribute it. We reverse the trial court's ruling and remand for further proceedings on the motion.

The events that led to Glover's arrest and were the subject of the hearing on his suppression motion took place when Officer Armando De Los Santos and Sergeant David Sledge of the Metropolitan Police Department encountered a car being driven by Glover in an alley in Northwest Washington, D.C. Observing that the front license plate on this car was not displayed properly but rather was propped up on the passenger side of the dashboard against the windshield, the officers decided to make a traffic stop. They pulled their patrol car in front of Glover to bar his way and then exited their vehicle and approached Glover to speak with him. Both officers noticed that Glover appeared nervous and fidgety, which put them on their guard lest he be dangerous.

Officer De Los Santos testified that as they came up to Glover, the officers told him to get out of the car. Glover testified that the officers only told him to keep his

hands on the steering wheel. Sergeant Sledge then opened the driver's side door, "because of his nervousness and I was afraid that he was gonna pull off," as he explained at the motion hearing. According to both officers, when Sergeant Sledge opened the door, Glover leaned sharply forward with his arms outstretched down between his knees. Concerned that Glover might be reaching for a weapon, Sergeant Sledge grabbed him by his arm and "escorted him out of the car." Glover, however, denied making any downward reaching movement. He testified that he "didn't have a chance to do anything" before he was jerked out of his seat. The motions judge did not explicitly resolve the several conflicts in the testimony, though in his subsequent rulings the judge accepted for the sake of argument (but without actually finding it as a fact) that Glover made the reaching movement to which the officers testified.

Officer De Los Santos conducted a pat-down of Glover and found no weapons on his person. In response to questioning, Glover stated that the car he was driving belonged to his father, a police officer. Glover insisted that the officers did not have probable cause to stop him or search the car, and he refused to consent to a search. Glover was not under formal arrest at this point. Nonetheless, because of Glover's apparent nervousness and his reaching movement, Officer De Los Santos decided to look under the driver's seat "to make sure there wasn't a weapon there or any type of contraband." On reaching under the seat, the officer found a burlap sack that could not be seen from outside the car. The sack was closed with a drawstring and its contents were not visible, but Officer De Los Santos testified that when he touched the sack, "it felt like

individual bags of marijuana" were inside.[1] The sack indeed contained "ziplocks of greenish weed which field-tested positive for the presence of THC," and Glover was placed under arrest.

Ruling from the bench at the conclusion of the hearing, the judge granted Glover's motion to suppress the marijuana and his statements to the police on two distinct Fourth Amendment grounds. The judge ruled that in blocking Glover's car from leaving the alley, opening the car door and removing Glover from his vehicle, the police exceeded the bounds of a legitimate traffic stop and unlawfully "put [Glover] in custody" (which would have required probable cause to arrest Glover) for what was merely a minor, "non-arrestable" traffic infraction. In addition, the judge ruled that in searching an area under the driver's seat that was not in plain view when Glover was no longer in the car, the police exceeded the bounds of a legitimate protective search.

Although we defer to the motions judge's findings of fact, *see, e.g., Carr v. United States*, 758 A.2d 944, 945 (D.C. 2000) (unless the findings are clearly erroneous), our review of the judge's legal conclusions is *de novo. Id.* We are constrained to disagree with both prongs of the judge's legal analysis. The absence of express factual findings on material issues complicates our review. We hold, however, that the police made a valid traffic stop, not a custodial detention, in the course of which they were permitted to open the door of Glover's car, order him to exit, and question him. If Glover reached down between his legs when Sergeant Sledge opened his car door, we are satisfied that his forcible removal from the car was permissible and did not transform the stop

---

**1.** Officer De Los Santos testified that he had made "close to a hundred" arrests through which he had become familiar with the "consistency" of marijuana.

into the functional equivalent of an arrest. We further hold that the scope of a legitimate protective search extended to the area under the driver's seat because that area could have concealed a weapon and would have been within Glover's reach upon his return to the car. Despite those conclusions, important unanswered questions of fact remain, such that while we reverse the ruling on appeal, we must remand for further proceedings on the motion to suppress.

▮ To begin our analysis, we note that the officers had objective reason to believe that Glover was committing a civil traffic infraction in their presence because they saw that his front license plate was propped up against his windshield and hence was not "securely fastened." DCMR § 18–422.4 (1995).[2] Although the infraction was a minor one, the officers' observation sufficed to permit a traffic stop. *See Whren v. United States,* 517 U.S. 806, 819, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996) (holding that police may stop a vehicle if they have probable cause to believe that civil traffic regulations have been violated); *see also Lewis v. United States,* 632 A.2d 383, 388 n. 12 (D.C.1993) ("the absence of a front tag on the automobile constituted reasonable articulable suspicion justifying the stop"); *Minnick v. United States,* 607 A.2d 519, 524 (D.C. 1992) ("The Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one.") (quoting *United States v. Mitchell,* 293 U.S.App. D.C. 24, 28, 951 F.2d 1291, 1295 (1991)). The officers therefore accomplished a lawful stop

when they positioned their patrol car to block Glover's exit from the alley, much as the police in *Whren* effected a lawful stop by pulling up alongside a car at a stop sign and ordering the driver to put the vehicle in park. *See* 517 U.S. at 808, 116 S.Ct. 1769. The motions judge erred in viewing the stop as custodial merely because Glover was not free to leave. *See Berkemer v. McCarty,* 468 U.S. 420, 436–37, 441–42, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (holding that while a traffic stop is a Fourth Amendment seizure in that the driver is not free to leave, the driver is not in "custody" for Fifth Amendment purposes because a traffic stop is not "the functional equivalent of formal arrest").

▮ Having lawfully stopped Glover's vehicle for a traffic violation, the officers were permitted to order Glover to get out of the car as a routine safety precaution without regard to whether they had an articulable suspicion of criminal activity or specific reason to believe that Glover might be dangerous. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111 n. 6, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977); *see also Maryland v. Wilson,* 519 U.S. 408, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997). Assuming that the officers did order Glover to exit as Officer De Los Santos testified, we attach no significance to the fact that Sergeant Sledge opened the car door for Glover; "there is little practical difference between ordering a person to open his door and get out of his car, on the one hand, and opening the door for the driver and telling him to get out, on the other." *State v. Ferrise,* 269 N.W.2d 888, 890 (Minn.1978). We acknowledge that it may be more intimidat-

---

**2.** The cited regulation provides that the "[o]wner's identification tags shall at all times be securely fastened in a horizontal position to the vehicle for which they are issued so as to prevent the tags from swinging and at a height of not less than twelve inches (12 in.) from the ground, measuring from the bottom of the tags, in a place and position to be clearly visible." DCMR § 18–422.4. The "improper display of tags" is a civil infraction for which a $50 fine may be levied. *See* DCMR § 18–2600.1 (1995).

ing for a police officer to take the initiative and open the car door himself. Nonetheless, "the actual invasion of privacy entailed in an officer's opening of the vehicle door is indistinguishable from, if not precisely the same as, that which occurs when an occupant is required to open a door to exit a vehicle pursuant to an order given under the authority of *Mimms* or *Wilson*." *United States v. Stanfield,* 109 F.3d 976, 983 (4th Cir.1997). Nor, without more, did the additional fact that Sergeant Sledge briefly grabbed Glover and pulled him out of the car transform the stop into an arrest or a custodial detention (not, at least, if Glover did make the suspicious reaching movement that the officers reported; it is a closer question otherwise). *See, e.g., Hicks v. United States,* 730 A.2d 657, 660 (D.C.1999) (force employed was intended to secure the safety of the officers).

■ Of course, merely because the police may have been justified in stopping Glover and removing him from his car does not mean that Officer De Los Santos was entitled to frisk him and search his car for weapons. The validity under the Fourth Amendment of those additional intrusions during a lawful traffic stop depends on whether the officer had a reasonable articulable suspicion based on objective facts and circumstances that Glover was armed or had access to a weapon in the car and was dangerous. *See Michigan v. Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983); *Mimms,* 434 U.S. at 111–12, 98 S.Ct. 330; *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Relying on the officers' testimony that Glover was notably nervous and, more important,

that he made a suspicious reaching movement toward the area below his seat when ordered to get out of his car, the United States argues that the frisk of Glover and the search of his car were warranted.[3] *See James v. United States,* 829 A.2d 963, 965 (2003).[4] We would agree with this argument except for one thing. Glover denied making the reaching movement that the officers attributed to him, and the motions judge made no clear finding as to whether he made it or not. There is no dispute that Glover was nervous, but we are loath to hold that his nervousness alone supported a reasonable articulable suspicion that he was armed and dangerousness. On remand the motions judge will need to resolve the factual dispute over whether Glover reached down between his knees when Sergeant Sledge opened his car door. (The judge also should explicitly resolve the dispute over whether the officers had asked Glover to exit the vehicle.)

■ If Officer De Los Santos did have sufficient reason to search Glover's car for weapons, the scope of his search was permissible. The motions judge erred in ruling otherwise on the grounds that Glover had been removed from his car and the area under the driver's seat was not in plain view. In *Michigan v. Long* the Supreme Court held that the police are permitted to search the passenger compartment of a car for weapons during a lawful traffic stop if they have a reasonable articulable suspicion that the driver (or a passenger) "is dangerous and ... may gain immediate control of weapons." 463 U.S. at 1049, 103 S.Ct. 3469. The police are allowed to search the passenger compart-

---

**3.** Since no weapon or other evidence was recovered from the frisk of Glover's person, we need focus only on the search of his car.

**4.** *See also United States v. Evans,* 994 F.2d 317, 319 (7th Cir.1993); *United States v. Green,* 151 U.S.App. D.C. 35, 36, 465 F.2d 620, 621 (1972); *cf. Powell v. United States,* 649 A.2d 1082 (D.C.1994).

ment even if the driver is outside the car and in police control, because the driver may reenter the car at some point either with or without police consent. *Id.* at 1051–52, 103 S.Ct. 3469. And the allowable search is not limited to areas in plain view but extends to all areas of the passenger compartment "in which a weapon may be placed or hidden," *id.* at 1049, 103 S.Ct. 3469, including bags or other containers that might hold a weapon.

■ ■ While it may have been permissible for Officer De Los Santos to search underneath the driver's seat, a question remains whether it was permissible for him to seize and open the burlap sack he found there. When the officer felt that sack, it was obvious to him that the sack did not contain a weapon (and hence that he did not need to open it to ascertain that fact). Rather, the officer suspected that the sack contained bags of marijuana. The government's only argument to us is that Officer De Los Santos was entitled to open the sack and examine its contents under the so-called "plain feel" doctrine. The gist of that doctrine is that if a police officer conducting an otherwise lawful search "feels an object whose contour or mass makes its identity immediately apparent" to him as contraband, the officer may lawfully recover the object. *Minnesota v. Dickerson,* 508 U.S. 366, 375, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *see also (Kenneth) Dickerson v. United States,* 677 A.2d 509, 512 (D.C.1996). " 'Immediately apparent' for purposes of plain feel analysis does not mean that an officer must know for certain that the item felt is contraband, only that there is probable cause to associate the item with criminal activity." *Ball v. United States,* 803 A.2d 971, 975 (D.C.2002) (citing *Texas v. Brown,* 460 U.S. 730, 741, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion)).

■ Where "plain feel" is invoked, the officer's initial "tactile perception of an object may be informed by the officer's training and experience and other attendant circumstances." *Ball,* 803 A.2d at 978 (citing *(Kenneth) Dickerson,* 677 A.2d at 512). However, where under "plain feel" the officer is conducting a protective *Terry* search for weapons and does not yet have probable cause, "the officer's 'touch' of the object cannot go beyond the bounds circumscribed under *Terry* and thus cannot amount to the sort of evidentiary search that *Terry* expressly refused to authorize … such as squeezing, sliding, and otherwise manipulating the contents of" the suspicious object more than is reasonably necessary to determine whether a weapon is present. *Ball,* 803 A.2d at 975 (internal quotation marks and citation omitted). We have cautioned that "[t]rial courts must be careful to assure that a police officer's 'immediately apparent' recognition of a concealed drug package, for example, is not too casually claimed or accepted." *Ball,* 803 A.2d at 975 (internal quotation marks and citation omitted).

In this case the motions judge did not reach the question whether the requirements of the "plain feel" doctrine were satisfied on the facts of this case—whether Officer De Los Santos recognized the contents of the burlap sack as marijuana based on his training and experience without unduly manipulating the sack after he determined that it did not contain a weapon. This is the second issue that needs to be explored on remand.

We reverse the order granting Phillip Glover's motion to suppress evidence and remand for further proceedings on that motion consistent with this opinion.