**Rodney A. JONES, Appellant**

v.

**UNITED STATES, Appellee.**

No. 06–CF–1000.

District of Columbia Court of Appeals.

Submitted Sept. 10, 2008.
Decided June 4, 2009.

Donald L. Dworsky, appointed by the court, was on the brief for appellant.

Jeffrey A. Taylor, United States Attorney, and Roy W. McLeese, III, Fernando Campoamor Sanchez, and Elizabeth H. Danello, Assistant United States Attorneys, were on the brief for appellee.

Before NEBEKER, TERRY, and SCHWELB, Senior Judges.

TERRY, Senior Judge:

Appellant, Rodney Jones, was convicted of carrying a pistol without a license, possession of an unregistered firearm, possession of unregistered ammunition, and possession of marijuana. His arrest and conviction arose from the stop and search of his vehicle at a police traffic checkpoint

in Northeast Washington. Jones argues that the trial court erred in denying his pre-trial motion to suppress the evidence recovered from his vehicle and his person. He also asserts that the government presented insufficient evidence to support his convictions of the three weapons-related offenses. We agree with the trial court that the search of Jones' vehicle and his person was lawful and that the evidence was sufficient. Accordingly, we affirm.

I

On the night of January 26, 2006, the Metropolitan Police Department established a traffic safety compliance checkpoint at 21st and East Capitol Streets, Northeast. At that location 21st Street has three lanes. The police blocked the two outer lanes with patrol cars, funneling traffic into one slow-moving lane, and set up additional lighting so that they could monitor the flow of traffic more effectively. They stopped vehicles only when they saw an obvious traffic violation.

Officer Ty Truong was monitoring traffic at the checkpoint that night when he saw a burgundy van, driven by appellant Jones, approach the checkpoint at a speed of about seven miles per hour. From a distance of approximately five to seven feet, Officer Truong noticed that Jones' van did not have a rear-view mirror. The officer then motioned for Jones to pull over.

After Jones pulled his van to the curb, Officer Truong told him that he had been stopped because the van lacked a rear-view mirror. The officer asked Jones for his driver's license, and Jones replied that he did not have one.[1] Officer Truong then asked if Jones had anything illegal in the van. Jones hesitated, then answered, "No." Jones did not look at the officer as he was being questioned but stared straight ahead, behavior which struck Truong and his partner as unusual. Officer Truong then asked Jones to step out of the van. When Jones did not comply at first, Officer Truong asked him again to alight from the van. Jones then attempted to reach for the ignition keys, which were still in place. At that moment, however, another officer who had approached the van from the passenger side reached in through the window and took the keys out of the ignition. Officer Truong then opened the door on the driver's side of the van, and Jones stepped out. After Officer Truong confirmed via radio that Jones' license had expired in 2002, he arrested Jones for driving without a license. The officer then conducted a search of the van and discovered a loaded gun under the driver's seat, with the butt of the gun facing outward. A search of Jones' person yielded several plastic bags of marijuana.

The government introduced into evidence at the suppression hearing a photograph of the van as it appeared on the night of Jones' arrest. Officer Truong noted in his testimony that no rear-view mirror was visible in the picture.

Jones testified at the suppression hearing that on January 26 he had borrowed and was driving his girl friend's car, which had side mirrors and a rear-view mirror. Jones stated that when Officer Truong pulled him over, he never asked about a rear-view mirror but instead requested his driver's license and registration. Jones added that after he told the officer that he did not have his license with him, Officer Truong responded that he was "out here

---

1. Officer Truong testified, both at the suppression hearing and at trial, that when he asked Jones for his license, Jones responded that he did not have one. Seeking to clarify his answer, the officer asked him whether he did not have a license at all or whether he had one but was not carrying it with him at the time. Jones then said he did not have a license at all.

looking for drugs and guns." After Jones replied that he could not be of any assistance, Officer Truong asked Jones for permission to search the car, but Jones declined. Jones said that Officer Truong then instructed him to turn off the engine, but as he was doing so, the officer became agitated and called for assistance. Truong and another officer then "snatched" him out of the van and proceeded to search it.

At the conclusion of the suppression hearing, the court credited Officer Truong's testimony that he stopped Jones' van because it lacked a rear-view mirror, and did not credit Jones' testimony. The court ruled that the stop of the van was lawful, and that the search of the van and of Jones' person was lawful as incident to his arrest for driving without a license. Accordingly, the court denied the motion to suppress evidence.

At trial Officer Truong and other officers testified about the circumstances leading to the stop of the van and the seizure of the gun and the marijuana. Jones did not testify. The jury found him guilty of all charges.

## II

 Our review of a trial court's denial of a motion to suppress is limited. *See White v. United States*, 763 A.2d 715, 719 (D.C.2000) (citing cases). "We must defer to the court's findings of evidentiary fact and view those facts and the reasonable inferences therefrom in the light most favorable to sustaining the ruling below." *Joseph v. United States*, 926 A.2d 1156, 1160 (D.C.2007) (citations omitted). The court's "ultimate conclusion[s]" on Fourth Amendment issues, however, are "subject to *de novo* review." *Brown v. United States*, 590 A.2d 1008, 1020 (D.C.1991)

(quoting *United States v. Campbell*, 843 F.2d 1089, 1092 (8th Cir.1988)). "Essentially, our role as an appellate court 'is to ensure that the trial court had a substantial basis for concluding' that no constitutional violation occurred." *Joseph*, 926 A.2d at 1160 (quoting *United States v. Johnson*, 540 A.2d 1090, 1091 n. 2 (D.C. 1988)).

Jones maintains that the trial court erred in denying his motion to suppress because the traffic checkpoint was in reality an unconstitutional roadblock. Since the police set up the roadblock for the purpose of general crime control, he argues, the resulting stop of his van was illegal, and the gun and the marijuana should have been suppressed.

In denying Jones' motion, the trial court made no ruling as to the constitutional validity of the checkpoint. We agree with the trial court that this case does not turn on whether the police arrested Jones in an unconstitutional roadblock; rather, for the reasons we shall explain, we are satisfied that the police checkpoint was not an impermissible roadblock. What we must decide instead is whether Officer Truong and his fellow officers had reasonable articulable suspicion to believe that Jones was violating the District's motor vehicle laws, and whether he was seized while approaching the checkpoint before such suspicion materialized. *See Duckett v. United States*, 886 A.2d 548, 551 (D.C.2005) (validity of traffic stop under Fourth Amendment turns on whether officer had "at least a reasonable, articulable suspicion that he was witnessing a traffic violation"). We hold that Jones was lawfully arrested for driving without a license and that his van and his person were lawfully searched incident to his arrest.[2]

---

**2.** Another officer, Michael Kasco, testified at trial that the gun was at least partially in plain view, "just underneath the driver's side with the butt end sticking out, underneath the

driver's side seat." When asked whether the gun was "protruding from the seat" or "completely ... hidden," Officer Kasco replied, "it was just barely underneath the seat, on top of

The court heard testimony that Officer Truong saw Jones driving a van without a rear-view mirror from a distance of approximately five to seven feet. The government also introduced a photograph of that van which showed that it had no rear-view mirror, and the officer testified that the photograph accurately reflected the state of the van when he stopped it. In light of this evidence, and given the court's determination that Jones' testimony was not credible, its finding that Officer Truong stopped Jones' van because it lacked a rear-view mirror is supported by the evidence and is not clearly erroneous.[3] *See Limpuangthip v. United States*, 932 A.2d 1137, 1141–1142 (D.C.2007) (discussing scope of review of trial court's factual findings in a suppression hearing).

Nor can there be any doubt that Officer Truong had a "reasonable articulable suspicion," based on objective facts, to believe that Jones had committed a traffic violation.[4] *See, e.g., United States v. Glover*, 851 A.2d 473, 476 (D.C.2004) (officer's observation of minor civil traffic violation justified traffic stop); *Lewis v. United States*, 632 A.2d 383, 388 n. 12 (D.C.1993) ("the absence of a front tag on the automobile constituted reasonable articulable suspicion justifying the stop"); *Minnick v. United States*, 607 A.2d 519, 524 (D.C. 1992) ("The Fourth Amendment does not bar the police from stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one"). Officer Truong was thus entitled to ask Jones to exhibit his driver's license, to require him to get out of the van as a routine safety precaution, and then to arrest him after he failed to produce a valid driver's license and the officer independently confirmed that he did not have one. *Mitchell*, 746 A.2d at 887 ("An officer conducting a routine traffic stop may request a driver's license and vehicle registration, [and] run a computer check"); *Glover*, 851 A.2d at 476 (officer may require driver to get out of the car during a lawful traffic stop); *see* D.C.Code § 50–1401.01(d) (2001) (prohibiting operation of a motor vehicle without a valid operator's permit); D.C.Code § 50–2302.02(8) (violation of § 50–1401.01(d) is a criminal offense); *cf. Botts v. United States*, 310 A.2d 237, 239–240 (D.C.1973) (probable cause to arrest when driver can produce neither license nor vehicle registration). Thus the only issue genuinely in dispute is whether the police illegally seized Jones—that is, whether he was seized before Officer Truong developed a reasonable articulable suspicion that his car lacked a rear-view mirror. *Patton v. United States*, 633 A.2d 800, 816 (D.C. 1993).

There is no dispute that a traffic stop, however brief, effects a seizure of a vehicle and its driver. *Michigan Dep't of State Police v. Sitz*, 496 U.S. 444, 450, 110 S.Ct. 2481, 110 L.Ed.2d 412 (1990) ("a Fourth Amendment 'seizure' occurs when a vehicle is stopped at a checkpoint"); *Berkemer v. McCarty*, 468 U.S. 420, 436–437,

---

the carpet." In light of this testimony, we need not consider the applicability *vel non* of the recent decision in *Arizona v. Gant*, —— U.S. ——, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009).

**3.** If indeed Officer Truong stopped Jones because he was, as Jones asserted at the suppression hearing, looking for drugs and guns, that fact would not affect our holding. "The lawfulness of a detention under the Fourth Amendment depends on its objective reasonableness, irrespective of the police officer's subjective motivation." *Mitchell v. United States*, 746 A.2d 877, 887 (D.C.2000) (citing *Ohio v. Robinette*, 519 U.S. 33, 38, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996), and *Whren v. United States*, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)).

**4.** 18 DCMR § 731.6 (1997) requires that all motor vehicles be equipped with rear-view mirrors. The lack of such a mirror is punishable under 18 DCMR § 2600.1.

104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). However, when an officer restrains a motorist's freedom of movement in other ways, it is less clear that a seizure has occurred. Courts generally agree that a police officer who blocks a motorist in a driveway or some other enclosed space seizes him. *See, e.g., Glover,* 851 A.2d at 474–476; *United States v. Kerr,* 817 F.2d 1384, 1386–1387 (9th Cir.1987); *United States v. Pavelski,* 789 F.2d 485, 488 (7th Cir.1986). But a motorist is *not* seized when a police car merely pulls up next to him in traffic. *See Michigan v. Chesternut,* 486 U.S. 567, 575, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988). In this case the police slowed the flow of traffic by constricting three lanes into one, thus enabling the observing officers to get a good look at each vehicle and its occupants at reduced speed and under intensified artificial lighting. The motorists, however, were neither stopped nor significantly delayed. They suffered merely the inconvenience of momentary congestion and heightened police scrutiny.

On the record before us, we are satisfied that in the moments before Officer Truong saw that Jones' van lacked a rear-view mirror, while he was slowly merging into one lane of traffic to pass through the checkpoint, neither Jones nor the van was "seized" in a Fourth Amendment sense. The police had set up no barrier and had given motorists no indication that they were required to stop for inspection; rather, they were expected to continue through the checkpoint, albeit at a reduced speed. Instead of routinely stopping the vehicles passing through the checkpoint and questioning their occupants—the hallmark of a true roadblock—the police stopped only those cars presenting noticeable traffic violations. Most of the cars proceeded through the checkpoint unimpeded. Unless an officer instructed a driver to pull over (as Officer Truong did to Jones), no reasonable motorist driving through the area would have believed that he was not free to leave. *See United States v. Mendenhall,* 446 U.S. 544, 551–555, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). On the contrary, a reasonable driver would have considered himself free to continue driving and proceed on his way.

▮ The minor delay and inconvenience that a motorist would experience from a compliance checkpoint like the one at issue here are really no different from the permissible "incidental restrictions" on vehicles delayed by a traffic stop on a busy highway, *Brendlin v. California,* 551 U.S. 249, 127 S.Ct. 2400, 2409–2410, 168 L.Ed.2d 132 (2007), or those accompanying normal traffic congestion, *Illinois v. Lidster,* 540 U.S. 419, 426, 124 S.Ct. 885, 157 L.Ed.2d 843 (2004). Courts routinely decline to characterize as a "seizure" police activity designed to heighten the ability of officers to observe passing vehicles. For example, in a case arising in Florida, the Eleventh Circuit upheld a police "drug interdiction operation" on a road that served as a natural funnel in which officers would observe passing traffic, send a police car after any vehicles seen to be in violation of Florida's motor vehicle code, issue a traffic citation, and seek consent to search the vehicles for narcotics. *United States v. Holloman,* 908 F.Supp. 917, 918–919 (M.D.Fla.1995), *aff'd,* 113 F.3d 192, 194 (11th Cir.1997). The Virginia courts found no roadblock and no seizure when a police officer placed himself at a public toll booth and watched vehicles as they slowed and stopped to pay the toll. *Carson v. Commonwealth,* 12 Va.App. 497, 499, 404 S.E.2d 919, 920 (1991), *aff'd en banc,* 13 Va.App. 280, 410 S.E.2d 412 (1991), *aff'd,* 244 Va. 293, 421 S.E.2d 415 (1992). Certainly, if a police officer had pulled up next to Jones while he was stopped at a traffic light and noticed the lack of a rear-view mirror, there would have been no seizure. *Chesternut,* 486 U.S. at 575, 108 S.Ct. 1975.

The compliance checkpoint, even considering the police department's use of·floodlights, was far less intrusive than the typical roadblock, where passing motorists are stopped and questioned. *See Lidster,* 540 U.S. at 427–429, 124 S.Ct. 885 (describing roadblock); *Galberth v. United States,* 590 A.2d 990, 992 (D.C.1991) (discussing roadblock at which all cars were stopped· and drivers were asked for documents); *Holloman,* 113 F.3d at 195 ("roadblock and roving stop cases concern whether ... the government may temporarily detain motorists in the absence of probable ¸cause or reasonable articulable suspicion"); *see also Mitchell,* 746 A.2d at 886 (use of flashlight to examine interior of car not ¸a search under Fourth Amendment). While the checkpoint may have been briefly inconvenient for the affected motorists, the police did not restrict Jones' freedom of movement in·such a way that a reasonable person in his position would not have felt free to leave. *Brendlin,* 127 S.Ct. at 2405; *State v. Skiles,* 938 S.W.2d 447, 453 (Tex. Crim.App.1997) (en banc) (no seizure when police shut down one lane of a two-lane road and observed passing traffic for violations).

Accordingly, because Jones was not seized until after Officer Truong developed a reasonable articulable suspicion that he had committed a traffic infraction, and because the arrest and search followed lawfully from the stop, we hold that the trial court properly denied Jones' motion to suppress.

## III

■ Jones also contends that the evidence was insufficient to convict him of the three weapons charges. Specifically, he argues that there was insufficient evidence of his intent to possess the loaded gun found in the van he was driving. Applying our well-established standard of review,[5] we hold that this claim is without merit.

■ Jones was convicted of carrying a pistol without a license (CPWL), possession of an unregistered firearm, and unlawful possession of ammunition. The trial court instructed the jury on constructive possession, that is, that Jones carried the pistol "about" his person. *See White v. United States,* 714 A.2d 115, 119 (D.C. 1998). To establish constructive possession as to the latter two charges, the government had to prove, by direct or circumstantial evidence, that Jones knew of the existence of the gun and had both the ability and intent to exercise dominion and control over it. *Rivas v. United States,* 783 A.2d 125, .129 (D.C.2001) (en banc). Because "possession is a broader concept than to carry on or about the person," however, to sustain a CPWL conviction the government's evidence must go "beyond mere proof of constructive possession and must show that the pistol was in such proximity to the person as to be convenient of access and within reach." *White,* 714 A.2d at 119 (citations and internal quotation marks omitted). Mindful of the policy underlying the CPWL statute, which is to "prevent a person's having a pistol or dangerous weapon so near him or her that he or she could promptly use it, if prompted to do so by any violent motive," we focus on whether "the location of the [pistol] ... presented an obstacle such as to deny appellant convenient access to the weapon or place it beyond his reach." *Id.*

---

**5.** "In considering a claim of insufficiency of the evidence, we view the evidence 'in the light most favorable to sustaining the conviction ... giving deference to the [jury's] ability to weigh the evidence and make credibility and factual determinations,' and to 'draw reasonable inferences from the testimony.' " 

*Carter v. United States,* 957 A.2d 9, 14 (D.C. 2008) (citations omitted). "To prevail on an insufficiency claim, an appellant must establish 'that the government presented no evidence upon which a reasonable mind could find guilt beyond a reasonable doubt.' " *Id.* (citation omitted).

at 119–120 (citations and internal quotation marks omitted).

At trial the government presented evidence that the police recovered a loaded gun from the floor of the van, with the butt of the gun partially visible and facing out from under the driver's seat toward the front. We have said that mere proximity of an accused to contraband is by itself insufficient to "enable a deduction beyond a reasonable doubt" that he had the necessary intent to possess it. *In re R.G.*, 917 A.2d 643, 649 (D.C.2007). Our en banc court has also noted that "there must be something more in the totality of the circumstances that—together with proximity and knowledge—establishes that the accused meant to exercise dominion or control over" it. *Rivas*, 783 A.2d at 130. In this case, however, the jury heard more than just testimony that Officer Truong recovered the loaded weapon from under the driver's seat in which Jones was sitting. *See Carter*, 957 A.2d at 15 (proximity to gun supported inference that appellant "had ability to exercise control over it").

The officer testified that when he asked Jones whether he had anything illegal in the van, Jones hesitated before responding. The jury also heard evidence that Jones did not look at Officer Truong during their conversation and at one point glanced down to where the gun was located. Jones did not immediately step out of the van when asked to do so but, rather, responded by reaching for the keys which were still in the ignition. Moreover, Jones was the sole occupant of the van. *See Olafisoye v. United States*, 857 A.2d 1078, 1087 (D.C.2004) (in marijuana possession case, the fact that "no other passengers were in the car when [the driver] was arrested ... tends to negate any inference that the marijuana [found under the front passenger seat] might have belonged to someone else").

The gun's location within reach, just below where Jones had been sitting, permitted the jury to find that he had convenient access to it and that there was no obstacle to his retrieving it. The fact that it was plainly visible to the officer supported an inference that Jones knew of its presence and had the ability to exercise control over it. *Carter*, 957 A.2d at 16; *Williams v. United States*, 884 A.2d 587, 604 (D.C. 2005) (evidence sufficient to support finding of constructive possession of handgun under driver's seat); *White*, 714 A.2d at 120. Jones' gestures, including his attempt to reach for the ignition, constituted additional evidence to support these findings. *See Rivas*, 783 A.2d at 137 (furtive gestures can support finding of constructive possession); *McGriff v. United States*, 705 A.2d 282, 290 (D.C.1997), *cert. denied*, 523 U.S. 1086, 118 S.Ct. 1542, 140 L.Ed.2d 690 (1998) ("the evasive actions of the driver in response to the police, along with his proximity to the gun, was sufficient to prove constructive possession by the driver"). We have, on similar facts, repeatedly stated that "an inference of constructive possession may be drawn against the *driver* of a vehicle in which contraband was found in plain view and in close proximity to the driver's seat." *Carter*, 957 A.2d at 16 (footnote omitted; emphasis in original). The evidence was also sufficient to show that Jones carried the weapon on or about his person. *White*, 714 A.2d at 119.

We therefore conclude that the evidence was sufficient to support the guilty verdict on all three weapons-related charges.

## IV

The judgment of conviction is

*Affirmed.*